JOHN A. CHRISTOPHER *vs.* ANTONIO MUSOLINO & another.

Suffolk.    November 8, 1921. — April 12, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Evidence,* Relevancy and materiality, *Res gestae. Agency,* Statements by agent.

At the trial of an action of contract for the purchase price of cheese which the plaintiff contended that he had purchased from a third party in South America and had sold to the defendant, to whom he had shipped it in the name of the third party, sight draft with bill of lading attached being forwarded through banks, the defendant contended that he had purchased the cheese from the third party and not from the plaintiff and that for $5,000 he had obtained a release from the third party which purported to settle an unpaid balance of $25,000. There was evidence tending to substantiate the plaintiff's contentions. It appeared that transactions were conducted by a South American bank acting on behalf of the plaintiff with a Boston bank acting on behalf of the defendant, and numerous letters and cablegrams were exchanged and were in evidence, without objection, it appearing that they all were written in the usual course of business and that frequently they bore intrinsic evidence of consultation by the banks with their respective customers. It also appeared that, although the second half of the purchase price of the shipment of cheese was to be paid on inspection of the merchandise by the defendant, the defendant obtained the bills of lading from his bank without payment and later refused to accept the drafts or to surrender the goods. There was a verdict for the plaintiff. Exceptions by the defendant to the admission of the following evidence were overruled:

(1) A letter from the defendant's bank to the plaintiff's bank, which contained statements referring to the plaintiff as owner of the goods and to the bills as being drawn to his order and to be paid against delivery of the shipping documents, the objection to the admission having been a general one, and it appearing that it was a part of the extensive correspondence between the banks,

and was written when the defendant had refused acceptance of the bills sent to his bank for collection although the money was payable on delivery and inspection and the cheese then was in the defendant's possession, and that the contents of the letter were shown to the defendant, after which his bank replied to it by another letter in evidence;

(2) A cablegram from the plaintiff's bank to the defendant's bank, which was shown to the defendant and which stated that the defendant's bank would be held responsible for the delivery of the bill of lading to the defendant without the sight drafts first being accepted;

(3) Cablegrams as to negotiations for payment by the defendant to the plaintiff of a sum less than the purchase price stipulated;

(4) Testimony of the plaintiff that he had reimbursed the third party for allowances which he had made to the defendant, that the third party had received such reimbursement from him, and that the plaintiff owed the third party for the cheese purchased for him, it appearing that in cross-examination of the plaintiff the defendant had sought to show that the plaintiff had taken the third person to the defendant for the purpose of settling the outstanding balance of $25,000 for $5,000 and hence that the plaintiff was estopped from claiming that he was the principal and not an agent in the transaction;

(5) Testimony that it was not usual nor proper to deliver bills of lading, sent to a bank for delivery upon payment of a certain sum, until the sum was paid;

(6) Testimony of one who had inspected the cheese in Boston at the request of the defendant, that he had offered a certain price greater than the value of it as testified to by the defendant; and that what he had offered was the market price.

Certain portions of the charge to the jury at the trial above described, when the charge was read as a whole, were *held* not to have harmed the defendant.


CONTRACT, with a declaration in four counts, the first and second of which were on accounts annexed for cheese sold by the plaintiff to the defendants, the fourth for alleged breach of contract to purchase cheese, and the third for money paid at the defendants' request. Writ dated February 21, 1919.

The action was tried before *White*, J. At the close of the evidence, the plaintiff waived all but the third item of the first count and the second count.

The cablegram from the defendants' bankers, J. B. Moors and Company, to the plaintiff's bank, the Holland Bank of South America, dated July 11, 1918, and referred to in the opinion, was as follows: "Our remittances 9959 9961 your telegrams 28th June 5th July as you delivered documents contradictory instructions our letter of 7th May we hold you responsible. Please get merchandise back we will refund accepted drafts. Our client authorizes rebate 2,000. — dollars on former remittance 9652 but refuses rebate whatever on Chaco shipments wire."

The following cablegrams were admitted in evidence subject to exceptions saved by the defendants:

From the defendants' bankers to the plaintiff's bank, dated July 16, 1918: "Credit drafts accepted June fourteenth your May seventh letter read June twentyfifth Musolino agrees return Chaco merchandise against repayment duty freight and charges disbursed plus ten percent their profit and our acceptances collection ninetysix fiftytwo remitting less two thousand dollars."

From the plaintiff's bank to the defendants' bankers dated July 18, 1918: "Please cable amount expenses claimed by Musolino and advise us in whose possession merchandise is allowing inspection by Shawmut bank we absolutely refuse reimbursement 10% profit."

From the defendants' bankers to the plaintiff's bank dated July 20, 1918: "Musolino hold merchandise they refuse negotiate unless ten percent allowed."

Other material evidence and exceptions saved by the defendants are described in the opinion. There was a verdict for the plaintiff in the sum of $25,150.04; and the defendants alleged exceptions.

*F. P. Garland,* for the defendants.

*W. P. Kelley,* (*J. T. Zottoli* with him,) for the plaintiff.

DE COURCY, J.   This is an action of contract for cheese sold and delivered to the defendants. The case went to the jury on the second count and the third item of the first count in the plaintiff's declaration; and a verdict was returned in his favor in the sum of $25,150.04. At the trial numerous exceptions were taken by the defendants; but the only ones argued in this court are those to the admission of certain evidence, and to portions of the judge's charge. We treat the others as waived.

The plaintiff, a cheese importer, had formerly worked for the defendants, who are wholesale dealers in cheese. In December, 1917, he went to South America in his individual capacity as an importer. While there he had several dealings with the defendants involving the sale and shipment to them of large quantities of cheese. This action was for an alleged balance due for the shipment made to the defendants on May 10, 1918, on the steamer Chaco. At the trial the contention of the defendants was that the plaintiff acted in the transaction as agent of one Grillo, from whom they had obtained a release. The record is confusing by

reason of the numerous references to exhibits which are not printed in their numerical order. From the letters, cablegrams and letters of credit it seems clear that the defendants were dealing with the plaintiff as principal; although the bills of lading and insurance policies are consistent with the claim that Grillo, whom the defendants never met prior to January, 1919, was the seller of the goods. In view of the rulings made by the trial judge, the verdict of the jury settled this question in the plaintiff's favor. The same is true as to the effect of the release given to the defendants by Grillo, which purported to settle the unpaid balance of $25,000 for $5,000, and was given without the knowledge of the plaintiff.

We consider the exceptions argued by the defendants in the order they appear on the brief. The first three relate to the admission in evidence of the letter from the Holland Bank of South America to J. B. Moors and Company, Boston bankers, dated May 7, 1918, the cablegram dated July 11, 1918, and three other cablegrams exchanged between these bankers. In this and other dealings between the parties, these Boston bankers issued letters of credit to the defendants, and handled the bills of lading, and other shipping documents connected therewith. The South American bank handled the drafts and other documents for the plaintiff. Numerous letters and cablegrams between these two bankers relating to the transactions between the plaintiff and the defendants were put in evidence, without objection. All were written in the usual course of business; they relate to the transactions between their respective customers, and frequently bear intrinsic evidence of previous consultation with them. The objection made to the letter of May 7, 1918, was a general one. The portions thereof to which objection is now made, are those referring to the plaintiff as owner of the goods, and to the bills as being drawn to his order, and to be paid against delivery of the shipping documents. Some of those facts are apparent from the bills themselves, which were in evidence. The letter sent by J. B. Moors and Company in reply to said letter of May 7, purports to have been written after a conference with the defendants, and it asserts their claims. At that time the defendants had refused acceptance of the bills sent to J. B. Moors and Company for collection, although the money was payable on delivery and inspection of the cheese, and that was in the possession of the defendants.

Mr. Francis J. Moors, one of the firm of bankers, testified that he talked with the defendant Berger about these unpaid drafts. To the question "And if a letter came from the South American Bank that involved Mr. Berger, or his position, you communicated those facts to Mr. Berger for protection, didn't you?" he answered "We certainly did." The jury could infer that this letter of May 7 was shown to the defendants, notwithstanding Berger's denial. And even if it were not, in the light of all the evidence we are of opinion that it did not affect the substantial rights of the defendants.

The cablegram of July 7, 1918, from the South American Bank to J. B. Moors and Company notified the latter that they would be held responsible for the delivery of the merchandise to the defendants, by reason of giving them the bill of lading without having the sight drafts therefor accepted. As to this it is enough to say that Mr. Moors testified that when he received the cablegram he took the matter up with the defendants, and they refused to return the goods unless they were paid ten per cent profit, in addition to being reimbursed for payments made and expenses incurred. The cablegrams between the bankers dated July 16, 18 and 20, 1918, were admissible for like reasons. That of July 16 was admitted during the examination of Mr. Moors; and he testified that before sending it he talked with the defendant Berger, and showed him "parts" of the cablegram received from the South American bank, dated July 11, which dealt with the same subject of the return of the cheese.

The defendants put in evidence a release from Grillo to them, dated January 20, 1919. At an earlier date the plaintiff had accompanied Grillo to the defendants' office. During the cross-examination of the plaintiff it was attempted to be shown that he had brought Grillo to their office for the purpose of settling the outstanding balance of about $25,000; and hence was estopped from claiming that he was the principal and not an agent in the transaction. In view of this cross-examination, and the testimony of the defendant Berger, we find no reversible error in admitting the testimony of the plaintiff as to his reimbursement to Grillo of the $2,000, which Grillo had allowed to the defendants; the receipt therefor; and the plaintiff's indebtedness to Grillo for this shipment.

The second fifty per cent of the purchase price was payable on the inspection of the merchandise. The defendants obtained from J. B. Moors and Company the bills of lading without payment; and later refused to accept the drafts or to surrender the goods. The testimony of the witness Thayer that it is not usual nor proper to so deliver bills of lading was competent. The testimony of the witness Cirace, who had inspected the cheese in Boston at the defendants' request, that he offered sixty-three cents for this cheese, and that was the market value, was competent in view of the testimony of the defendants as to its condition and value. As to the portion of the charge excepted to, we cannot say that harmful error is shown when the charge as a whole is considered.

*Exceptions overruled.*