Affirming.
On the 15th of July, 1923, appellee leased for the term of one year to appellant a house in Lexington for resident purposes. The rent of $65.00 a month was to be paid in advance on the first of each month, and appellant agreed to take good care of the premises and return same in as good condition as when received, "ordinary wear, accidents by fire and the elements, and other unavoidable accidents excepted. If destruction as aforesaid (total or partial) ensues, so as to make the premises untenable for the purposes designated, the lessee may surrender and cancel this lease."
Appellant became dissatisfied and notified appellee's agent of his purpose to vacate the premises on the tenth of November, 1923, but for family reasons did not in fact vacate it until the first or December. Appellee did not agree that he might vacate, but upon having notice of his purpose placarded the place with notices that it was for rent; and then after appellant actually vacated he reentered and on the 5th of January, 1924, rented the place to another for a term longer than the remainder of appellant's term.
This is an action by appellee for the rent accruing from the first of December to the fifth of January amounting to $75.84 under the terms of the contract, and a general order of attachment was issued against the property of defendant.
The attachment was subsequently discharged as to certain property upon which it had been levied, and that branch of the case is not here.
Defendant filed an original answer, then an amended answer and counterclaim, and subsequently withdrew the latter and filed a substituted amended answer and counterclaim in six paragraphs, upon which, together with an amendment to the second paragraph thereof later filed, the trial was had.
The first paragraph of the substituted answer and counterclaim is merely a denial that defendant broke his contract of lease by vacating on December first, or that he owes plaintiff the sum of $75.84 for rent or otherwise.
The second paragraph alleges in substance that on November 3rd, 1923, he gave the plaintiff written notice he would vacate the premises on November 10, and that immediately thereafter plaintiff entered upon the premises *Page 281 
and placarded the house for rent, whereby, as he alleges, the relationship of landlord and tenant was terminated; that on November 6th defendant and his wife, because of the sudden illness of her mother, were called away from home, but before leaving by written notice notified plaintiff he might not be able to vacate the house on the tenth of November, but he would pay him for full time he occupied the same, and that upon his return to Lexington on the 13th of November he paid the plaintiff's agent $65.00 in full rent for the month of November, and notified him again that he would vacate the house on December 1st. That upon none of those occasions did plaintiff or his agent make any protest or objection to the surrender by defendant of the lease or the vacating of the premises.
The third paragraph alleges that before renting the house he examined it but could not in the exercise of ordinary care and diligence discover the latent defect which rendered it unfit for use as a residence; that the house is of brick veneer construction and is erected in such manner as to permit rats, cockroaches and other vermin to so infest the same as to constitute it a nuisance, and that they did so infest the house, and that by gnawing and running between the walls and the ceiling overhead prevented one from sleeping in peace therein; that the rats carried garbage into the house from the outside, and the cockroaches covered the floors, pantry shelves and food containers at night so that it was impossible to protect food from them and the rats; that the rats carried the germs of disease, and so infested the house as to render it untenable, unfit, unhealthy and a menace to the health of himself and family, and then relies upon the terms of his lease as giving him the option to vacate before the termination of the lease.
Then in the fourth paragraph he alleges in substance that the plaintiff knew, or could have known by the exercise of ordinary care and diligence that the house was so infested by rats and cockroaches as to constitute the same a nuisance, and that defendant had no such knowledge or information, and could not discern its existence by the exercise of ordinary care and diligence; and that as plaintiff failed to notify him before renting the house of these facts constituting the place an unfit one to live in for residence purposes he had been damaged in the sum of $75.00, for which he asked judgment. *Page 282 
In the fifth paragraph he alleges that the plaintiff maliciously, wrongfully and illegally directed the sheriff to levy the order of attachment on defendant's household goods, which levy had been quashed by an order of the court; and that at the time the plaintiff knew the property so levied upon at his direction was exempt, and caused the said levy to be made solely for the purpose of destroying the business reputation of the defendant, whereby he was caused special damages for which he prays judgment.
The sixth paragraph alleges that at the time of the institution of this action by plaintiff he had maliciously, wrongful and illegally, for the purpose of destroying defendant's credit and business reputation, reported him to a credit men's association in the city of Lexington as one who would not pay his rent, and could not be trusted or credited, by reason of which defendant and his family had been denied credit, all to his damage in the sum of $2,500.00.
The court sustained a demurrer to the second, third and fourth paragraphs of this pleading, and sustained a motion of the plaintiff to strike out the fifth and sixth paragraphs thereof; whereupon defendant filed an amendment to the second paragraph, to which a demurrer was overruled.
A jury trial was had, and the court on the trial submitted the single issue whether appellee had accepted the surrender of the property on November 10, 1923, and thereafter permitted defendant to remain upon the premises under a new and separate agreement; and in a separate instruction told the jury that the acceptance of the surrender meant either an express agreement to accept the surrender, or that the surrender might be implied from the conduct of the parties.
There is no allegation that plaintiff fraudulently represented to or concealed from defendant the alleged fact that the house was infested with rats and cockroaches; but it is only alleged that the plaintiff did know it was so infested, or could have known the same by the exercise of ordinary care and diligence.
In the case of Franklin v. Tracy, 117 Ky. 267, there was a collapse of a tenant house occupied by a tenant, caused by inherent defects in the construction of the building, existing at the time of the rental, whereby the tenant's personal property therein was damaged. In an action for the damage, a demurrer to the petition was *Page 283 
sustained, and this court in affirming the judgment held in substance that the landlord was not liable to the tenant unless actual knowledge is charged against him and shown.
In the consideration of that question, the court went rather extensively into the authorities, and, among others, quoted from Taylor on Landlord and Tenant (sixth ed.), section 381, to the effect that there is no implied warranty that a house shall be reasonably fit for habitation, or for any purpose for which it is let,
 "and where a person hired a house and garden for a term of years, to be used for a dwelling house, but subsequently abandoned it as unfit for habitation, in consequence of its being infested with vermin and other nuisances, which he was not aware of when he took the lease, the principle was laid down, after an elaborate review of all the cases where a contrary doctrine seemed to have prevailed, that there is no implied contract, on a demise of real estate, that it shall be fit for the purposes for which it was let. Consequently an abandonment of the premises under these circumstances forms no defense to an action for rent."
Obviously the language of the rental contract did not contemplate the tenant's right to surrender the property and cancel the lease before its expiration for any such reason as is asserted in that paragraph. It contemplated only that he might surrender the same upon accidents by fire or the elements, or other unavoidable accidents, and that if total or partial destruction resulted from any such causes so as to make the premises untenantable for residence purposes, he might vacate the property for such reasons. His right to surrender the property and cancel the lease was dependent upon the premises becoming untenantable because of the accidents enumerated in the contract, and for no other.
But in the amendment to the second paragraph of the substituted amended answer and counterclaim the defendant alleged in substance that on the 13th of November, 1923, when his agent paid the rent for that month it was done with the understanding that defendant might vacate the property on December 1, 1923, and this distinctly made the issue whether there was or not an agreement to that effect. *Page 284 
The evidence does not show that the landlord ever at any time agreed to accept the surrender of the property or lease from appellant, but it is appellant's contention that appellee's acts constituted such a surrender by operation of law. The acts complained of are that the landlord upon receiving notice of the tenant's purpose to vacate the property went there a day or two later and placarded the same for rent, and that his agent in conversations with the tenant and the tenant's agent offered no objection to his vacating the premises, but entered into no agreement that he might do so. The fact that a landlord does not actually protest against the vacating of property by a tenant before the expiration of the term, but elects to stand upon the terms of his contract without comment when the tenant notifies him of his purpose to vacate, cannot be construed into an agreement by him that the rental contract is terminated. Nor will the fact that a landlord, having notice from his tenant that he intends to vacate before the expiration of his term without agreement or understanding between them, enters upon the premises for the sole purpose of placarding it for rent, be deemed such a re-entry by him as will operate to terminate the contract. Such action by the landlord was obviously for the benefit of the tenant himself; for if he could re-rent the property to another after the tenant carried out his purpose to vacate, then the tenant would be the beneficiary of the re-renting to the extent that it covered his unexpired term, and be relieved proportionately from the payment of rent.
This fair and just rule seems to be in accord with the decided weight of authority, although there are conflicting views expressed in some of the states. 24 Cyc. 1165; Higgins v. Street, 13 L.R.A. (N.S.) 398.
To the latter case is appended a long and instructive note on this subject, not only showing the weight of authority to be as we have stated, but giving the conflicting views as expressed by other courts.
An accurate statement of the rule is contained in the note to that case as follows:
 "If the landlord retakes possession after abandonment by a tenant, he does not thereby release the tenant from further claim for rent, provided he, in so possessing himself of the premises abandoned, does so either to take care of them, or to re-rent them for and in behalf of the tenant, or for some other purpose *Page 285 
that is not inconsistent with the theory that he retakes possession in behalf of the tenant and for his benefit; and in such case, the tenant will yet remain liable to him for the agreed rental for the unexpired term, less what the landlord has derived from them from other sources after he has taken possession."
It is clear then that the instruction given by the court was at least as favorable to defendant as it should have been; and the finding on the issue is sustained by the weight of the evidence.
The fourth paragraph was a counterclaim because of the plaintiff's failure to notify defendant before renting the house of the fact alleged to have been known by him (or that he could have known same by the exercise of ordinary care) that it was infested with rats and cockroaches. This counterclaim has been heretofore disposed of, and the demurrer thereto was properly sustained.
The fifth paragraph was a counterclaim based upon the allegation that the plaintiff had maliciously and wrongfully caused the sheriff to levy the order of attachment issued in this case upon property which he knew was exempt for the purpose of destroying defendant's business reputation.
The precise question was presented and adjudicated in Damron v. Sowards, 203 Ky. 211. In that case, as in this, the defendants against whom an attachment had been issued filed an answer, counterclaim and cross-petition against the plaintiff asserting damages growing out of its wrongful issual, and the court, after defining a counterclaim and a cross-petition, said:
 "It did not arise out of the contract or transaction stated in the petition as a foundation of plaintiff's claim. It was not connected in any way with the subject of the action. It did not affect, nor was it affected by the original cause of action. On the contrary it arose long after the occurrence of the transaction by which the original debt was created, and was based entirely upon subsequent wrongs alleged to have been committed by the plaintiff in the enforcement of the collection of the debt."
For the same reason the allegations of the sixth paragraph did not present the proper subject matter of a counterclaim. Even if, as alleged, plaintiff did at the *Page 286 
time the suit was filed maliciously and wrongfully report him to the credit men's association as one who would not pay his debts, still it is clear that such fact did not become known to defendant or the public until after that time, and for the same reasons stated in the Damron case they were not the proper subject matter of a counterclaim.
Clearly the court's ruling in striking out the fifth and sixth paragraphs was correct.
Judgment affirmed.