[No. 3027, Sept. 5, 1927]

ARMIJO v. PETTIT et al.

[259 Pac. 620]

### SYLLABUS BY THE COURT

1. Evidence held not to support claim of breach of landlord's agreement to consent to assignment of lease to responsible party.

2. Evidence held not to support damages for breach of covenant to repair.

3. Efforts of landlord to minimize damages by securing tenant for remainder of term do not release abandoning tenant from liability for rent, even though they result in securing a tenant for a longer term.

4. Making a lease for future occupancy does not of itself release the abandoning tenant from liability.

5. Provision in lease construed as creating a lien on lessees' property in nature of chattel mortgage.

6. Conventional lien on lessees' property held not void for uncertainty of description.

7. A conventional lien on the lessees' property to secure covenants of the lease is not, as between the original parties, lost by lessor's consent to removal of property from the demised premises.

---

[1] 35CJ p. 988 n. 47 New. [2] 36CJ p. 165 n. 79. [3] 35CJ p. 1093 n. 75. [4] 35CJ p. 1094 n. 93; 36CJ p. 343 n. 22. [5] 35CJ p. 1175 n. 91; 36CJ p. 481 n. 48. [6] 36CJ p. 482 n. 54. [7] 36CJ p. 484 n. 88.

Appeal from District Court, Bernalillo County; Hickey, Judge.

Action by Mrs. N. T. Armijo against R. Fred Pettit and another to recover rent, damages, and to establish a lien. From a judgment for plaintiff, defendants appeal. Reversed and remanded, with direction.

H. B. Jamison and Hanna & Wilson, all of Albuquerque, for appellants.

Simms & Botts and Henry G. Gatling, all of Albuquerque, for appellee.

OPINION OF THE COURT

WATSON, J.   October 1, 1921, appellee (plaintiff) leased certain premises to appellants to be used for a confectionery store for a term of two years, reserving rent in the sum of $7,800 payable monthly in advance, $300 monthly for the first year, and $350 monthly for the second year.   The lessees covenanted that they had received the premises in good condition, and to yield them up in the same condition as when taken, loss by fire, or inevitable accident, or ordinary wear excepted, and to keep the premises in repair during their occupancy.   The lessees also agreed not to underlet the premises, or assign the lease without the written consent of the lessor; but the lessor agreed on her part ''to consent to the transfer of this lease to any responsible party, the premises to be used for the same business as that of the lessees.''

Shortly before December 1, 1922, the lessees moved their stock and trade fixtures from the building, leaving it unoccupied.   They paid the rent up to December 1, 1922.   February 19, 1923, the lessor made a new lease to one Farley for a term of five years, to commence on April 1.   The rent reserved was the same as appellants would have been required to pay for the remainder of their term.   The new lease required appellee to make certain changes and repairs to fit it for occupancy by the new tenant.

This suit was instituted to recover the rent from De-

cember 1, 1922, to April 1, 1923, to recover damages for breach of appellants covenant to repair, to establish a lien upon the trade fixtures which appellants had removed from the building, and for an attorney's fee under a provision of the lease for the payment of costs and attorney's fee incurred in enforcing the terms of the lease. The court made findings of fact and conclusions of law, and rendered judgment for $1,452.50 damages and an attorney's fee of $100. The damages comprised $1,225 for rent and $227.50 for repairs to the premises. The amounts adjudged were declared to be a lien upon the property removed from the building. The lien was foreclosed, and the property ordered sold by a special master.

[1] For defense by way of new matter, appellants set up a breach on the part of the appellee of her agreement to consent to an assignment of the lease to a responsible party. They urge that the trial court erred in finding against them in this respect. A careful reading of all the evidence relating to this attempted transfer of the lease leaves us somewhat in doubt as to whether Gibbons, the prospective assignee, was actually ready and willing to take over the remainder of appellants' term, without concessions on the part of the appellee or an agreement as to renewal at the expiration of the term. It is also to be doubted whether Gibbons did not himself discontinue negotiations because of trouble in getting concessions and of anticipated trouble in getting a renewal. Such being the state of the record, the findings of the trial court must stand. After the failure of the negotiations with Gibbons, appellants remained in possession and paid the rent for several months. Appellee contends that this amounted to a waiver, even if there was a breach of the agreement. But this proposition we need not consider.

[2] The damages allowed for breach of covenant to repair consisted of three items, namely, $7.50 for carpenter work, $145 for plastering, and $75 for papering. There was total failure of proof as to the $7.50 item. No doubt some plastering was properly chargeable to

appellants. It is equally clear, however, that some of the plastering was not so chargeable. The proof merely shows that $145 was paid for plastering as a whole; so that there was no proof upon which the court could properly arrive at the amount of damages recoverable under this item. Appellants would not, under the lease, be chargeable for the papering, if the necessity for it was due to fire, inevitable accident, or ordinary wear. We find no evidence to show anything more than ordinary wear, except that the paper had been blackened by smoke from a fire in adjoining premises. This damage would seem, under the lease, to fall upon the lessor. We conclude, therefore, that there was no substantial evidence upon which to base damages for breach of covenant to repair; and that the court erred in including them in the judgment.

The court, found, in substance, that, upon the abandonment of the premises, December 1, 1922, appellee took possession merely to protect the property, and did not accept or take exclusive possession until March 15, 1923, when she commenced installing repairs and making changes for the in-coming tenant. Appellants make several attacks upon this finding. They first urge that the evidence shows an acceptance of surrender on or about December 1, 1922. At that time appellee's tenant apparently accepted the keys. Counsel do not exactly agree as to the circumstances or conditions of the acceptance. Appellants, however, do not rely upon the fact as being determinative, in itself, of a surrender, but claim that such accepted surrender is shown by this and other facts. It appears that for perhaps two months prior to the making of the lease on February 19, 1923, appellee's agent had been negotiating with Farley, as a prospective tenant, for a long-term lease. So it is urged, being in possession of the building and of the keys, it thus appears that her possession was for her own advantage and benefit rather than for that of the appellants, or merely for protection of the premises.

[3] It was undoubtedly proper for appellee to minimize her damages by procuring, if she could, a tenant

for the remainder of the term. We do not understand appellants to contend that efforts to that end would constitute acceptance of surrender. If such efforts resulted in securing a tenant for a long term, does that fact vary the rule? The long-term lease to Farley was as beneficial to appellants as a lease merely for the remainder of the term would have been. It does not appear that the remainder of the term would have been taken by Farley, or could have been disposed of to any one else. It does not appear that any tenant could have been found to occupy prior to April 1. We do not think, therefore, that the trial court was in error in refusing to find that there was an immediate acceptance of surrender.

[4] We do not think either that the making of the lease on February 19 necessarily terminated appellants' liability for the rent. It is seldom that conditions permit immediate taking of possession by the lessee. Conceding that the landlord may minimize damages by procuring a tenant for the remainder of the term, and considering, as we do, that this rule of law is greatly to the advantage of the defaulting or abandoning tenant, it would restrict the operation of that rule and be to the tenant's disadvantage to hold that his liability for rent terminates upon the mere making of a contract for future occupancy.

The trial court, as seen, held that appellants' liability for the rent ended when appellant commenced to make the changes and repairs called for by the new lease. Appellants contend that the court erred in fixing March 15 as the date. The evidence as to when these repairs and changes commenced is quite uncertain. Appellee contends that it appears that the work was done during the month of March, and that the court was justified in selecting March 15 as the date. As proof that the work commenced earlier, appellants point to the bill of Chauvin for the $75 item for papering, which bill is dated March 2, 1923. It would appear from this that appellee was in possessoin, fitting the premises for her new tenant, at least as early as March 1. There is no

evidence whatever to the contrary. We assume that the date upon this bill was overlooked by the trial judge in making his finding, as a result of which the award for rent is $175 too much.

[5] The lien, established by the decree, upon appellee's property, was not based upon the statute, as is apparent from the fact that other items besides the rent were included in the amount. Appellee does not attempt to sustain her lien under the statute, but relies upon a paragraph of the lease which, omitting non-essentials, read as follows:

" * * * If the rent * * * or any part thereof shall be * * * unpaid * * * or if default * * * be made in any of the covenants or agreements herein contained to be kept by the lessees, * * * it shall be lawful for the lessor * * * at lessor's election * * * to declare said term ended and into the said premises * * * to re-enter and the said lessees * * * to * * * put out * * * and the said premises again to repossess * * * as in its former state. And to distrain for any rent that may be due thereon upon any property belonging to the said lessees; * * * *meaning and intending hereby to give the said lessor * * * a valid and first lien upon any and all goods, chattels, and other property belonging to the said lessees as security for the payment of said rent and fulfillment of the faithful performance of conditions in manner aforesaid, anything hereinbefore mentioned to the contrary notwithstanding.* And if * * * said term shall be ended at such election of said lessor * * * the lessees * * * do * * * agree to surrender * * * said * * * premises * * * to the lessor * * * immediately, * * * and, if lessees shall remain in possession * * * ten days after notice of such default, * * * lessees shall be deemed guilty of a forcible detainer. * * * And it is further * * *agreed * * * that the lessees shall pay and discharge all costs and attorney's fees and expenses that shall arise from enforcing the covenants of this indenture by the lessor. The lessees shall have the same right to terminate and cancel this lease for any default made in any of the covenants or agreements herein contained to be kept by the lessor. * * * "

The italicized portion of the foregoing provision is relied upon by appellee as sustaining the judgment. Appellants contend that the lien there attempted to be created was merely to secure the rent due, in case it became necessary for the appellee to re-enter and cancel the lease for default on the part of appellants, and that it has no application in a case like this, where the les-

sees themselves abandon the premises without the consent, and contrary to the wishes of the lessor. The contention is thus stated:

" * * * If this lien is valid at all, it may be asserted only in distraint proceedings where the lessor declares the term ended and re-enters the premises."

This contention is based upon the fact that what precedes the particular language in question has to do with the landlord's right to reenter and forfeit the lease on default in payment of rent, distraining for any rent then due, and upon the further fact that, in regard to the "valid and first lien * * * as security for the payment of said rent and fulfillment of the faithful performance of conditions, * * *" the language used is more appropriate to define the right already contracted for than to create an independent one. In support of this interpretation, appellants point out also that this clause furnishes security only for "said rent," and urge that "said rent" means "any rent that may be due thereon," as expressed in the preceding clause relating to distraint. Since distraint was a common-law remedy, available only for the rent due when the landlord re-entered and forfeited the term, it is contended that there is no agreement here for security for rent accrued between abandonment by the tenant and re-entry by the landlord.

We might find it difficult, if we felt it necessary, to meet these technical objections to the trial court's interpretation of the lease. Counsel for appellee have not attempted it. However involved the language, or inconsistent the expressions, it is the real intent of the parties that is to be sought. They undoubtedly had the right to stipulate for security. A lien thus agreed upon is contractual or conventional. See Tiffany on Landlord and Tenant, § 322 et seq. The provision, construed as a whole, satisfies us that the word "distraint" was used in a popular, rather than a technical, sense, and that what follows, rather than being limited by it, defines the meaning which the parties gave to it. Holding otherwise, we must disregard an expression, easily

understood by laymen, which seems to contemplate a lien broader either than the common-law right of distress, or than the statutory lien.

[6] Appellants also contend that, if the lease be construed as an attempt to create a conventional lien, it must be held void for uncertainty in the description of the property. 16 R. C. L. 987, § 490, is cited. The statement here found is taken from Borden v. Croak, 131 Ill. 68, 22 N. E. 793, 19 Am. St. Rep. 23. That case involved the sufficiency of a description to include after-acquired property. Argumentatively, the court remarked that the description might well be held void for uncertainty, even as to property owned at the time. In the case at bar, however, we think it fairly appears that the property upon which the court impressed the lien was the trade fixtures of the appellants, generally described in another paragraph of the lease, actually on the premises when the lease was executed, and removed when appellants abandoned the premises. In the case cited, the rights of creditors were involved. That is not true here. We see no occasion to deny the application of this lien to the very property which, it is evident to us, it was intended to cover.

[7] Appellants contend, finally, that appellee's agent is shown to have been aware of the removal of the property at the time, and that his failure to protest against it amounts to consent to such removal, and to a waiver of the lien. Tiffany says (Landlord and Tenant, § 322g) :

"The landlord does not, it has been held, waive his conventional lien on property belonging to the tenant by failing to object to its removal from the premises. * * * "

The author cites Wisner v. Ocumpaugh, 71 N. Y. 113, where it was said :

"The point that the defendant voluntarily abandoned his lien, by not objecting when he saw the property in the cart, after it had been taken from the premises, is not tenable. The lien was not dependant upon absolute possession in the defendant, but rested in contract, and attached to the property when in possession of the lessee, or any one standing in his place."

Appellants cite Merrill v. Ressler, 37 Minn. 82, 33 N. W. 117, 5 Am. St. Rep. 822. It was there decided that such a lien as we have here, being in the nature of a chattel mortgage, would not be good as against creditors, unless filed as the statute required chattel mortgages to be filed. Such holding is consistent with Tiffany's view as to the nature of the conventional lien. He says:

"A provision in the instrument of lease, giving a lien on personalty in favor of the lessor, is frequently assimilated by the courts to a chattel mortgage, and the rights of the lessor thereunder determined accordingly. In jurisdictions where the common-law view of a mortgage, as involving a conveyance of the legal title, subject to a defeasance, no longer prevails, such a lien provision is, it seems neither more nor less than a mortgage, and it has been so referred to."

In New Mexico the lien theory of mortgages prevails. Possession by the mortgagee is not requisite to the preservation of his lien. Nor need he have possession when resorting to equity for foreclosure. Wathieu v. Roberts, 31 N. M. 469, 247 P. 1006. The question arising only between the original parties to the instrument, we do not think that their relation has been changed even if it be considered that the property was removed from the demised premises with appellee's consent.

It seems, therefore, that, because of the two errors pointed out, the judgment is excessive to the extent of $402.50, but otherwise correct. It should therefore be reversed, and the cause remanded, with direction to the district court to enter judgment for the proper amount. It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.