279 P.2d 700

JOHN C. CUTLER ASSOCIATION, a corporation, Plaintiff and Appellant, and Respondent on Cross-Appeal,

v.

DE JAY STORES, Inc., a foreign corporation, Defendant and Respondent, and Cross-Appellant.

No. 8163.

Supreme Court of Utah.

Jan. 26, 1955.

Samuel Bernstein, Ray S. McCarty, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff appeals from a judgment allowing recovery for rent and damages for abandoning a lease before its term expired, and for attorney's fees. Plaintiff appeals claiming that additional amounts should have been allowed; defendant responds and cross-appeals, challenging the propriety of awarding any damages whatever.

Plaintiff Cutler is an incorporated family association, and DeJay Stores is a Delaware corporation doing business in Utah. On June 30, 1951, Cutler leased a store at 36 South Main Street, Salt Lake City, to defendant for a rental of 5% of gross sales or a minimum of $400 per month. There is uncertainty as to the term, but it is immaterial here. The parties have assumed it to be for a period of five years.

The DeJay Clothing Store operated for several months but was never sufficiently profitable to require more than the minimum of $400 per month. DeJay was dissatisfied with the location and began looking for a new one. About February 15, 1952, a conference was held between Robert Cantor, DeJay's local manager, its real estate broker a Mr. Solomon, and plaintiff's Harold Cutler, concerning the desirability of moving. During this conference the parties were in accord in assuming that DeJay would continue to remain bound by

Reid W. Nielson, Clarence M. Beck, Elias Hansen, Salt Lake City, for appellant.

the lease and that Cutler would cooperate in obtaining a new tenant. Within the next few months, five different business firms made various proposals to lease the property. With respect to each proposal there was some feature objectionable to the plaintiff and they were all rejected. With this the trial court found no fault.

About March 1, 1952, DeJay moved out of the property, but continued to pay rent in full to and including the month of June. July 25, it had the constable deliver to Cutler a notice stating that it considered the rejection of offers to lease or sublease the premises a breach; that it returned possession of the property to Cutler and therewith presented the keys.

Despite continued efforts to find a new tenant no permanent one was obtained until May 1953. Cutler's suit was for rent during the entire period of vacancy. The trial court allowed recovery for only a part of that time. DeJay had already paid for four months of the period of vacancy —March, April, May and June, and the trial court allowed for an additional three months—July, August and September, based upon its determination that there was a surrender and acceptance of the property in September, which terminated the obligation to pay further rent under the lease.

The main issue presented on this appeal is whether the facts and circumstances shown by the evidence are such as to warrant the finding of surrender and acceptance.

Inasmuch as there was no express agreement to abandon the lease, the defendant had the burden of establishing as an affirmative defense such an agreement implied from the conduct of the parties. That this can be done we have recognized. In Willis v. Kronendonk,[1] it was stated:

"* * * where a tenant abandons the premises, and the landlord unconditionally goes into possession thereof and treats them as though the tenancy had expired, it amounts to a surrender, and the landlord cannot thereafter recover any rent, nor use for damages. If he desires to reserve that right he must recognize the tenants rights in the premises for the unexpired term."

This does not mean, however, that the landlord cannot enter the premises and exercise the rights of an owner in keeping them safe from damage; nor that he may not do things reasonably necessary in attempting to rent the premises for the purpose of mitigating damages. It is only when he exercises dominion over the premises beyond those purposes and inconsistent with the rights of a tenant whom he seeks to hold for the rental of the premises, that a finding of surrender is justified. That acceptance of the keys and attempting to re-let the premises are not alone sufficient to

1. 58 Utah 592, 200 P. 1025, 1030, 18 A.L.R. 947.

constitute a surrender and acceptance was recited by this court in the recent case of Belanger v. Rice:[2]

> "* * * [A]cceptance of the keys might well be merely in order to protect the property and the reletting of the premises might equally logically be for the purpose of mitigating damages in a suit upon the lease."

Such acts may of course be considered with other circumstances on the question of surrender.

■ There is some conflict as to the rule of law to be applied in determining whether a reletting will terminate the obligations of a lease.[3] In McGrath v. Shalett, 114 Conn. 622, 159 A. 633, 634, it is said:

> "* * * In some states, a reletting terminates the lease as a matter of law. A second line of authorities holds that this result follows unless there is notice to the tenant of the landlord's refusal to accept the surrender and of his intention to relet. The third school does not set up any arbitrary standard, but holds the question of acceptance to be one of intention and a question of fact.
>
> "Connecticut adheres to the third school, * * *. As indicated above * * * support can be found for any one of the rules referred to. The

great weight of authority, however, is in accord with the Connecticut rule. (Citing authorities.)

> "Our rule is the rule of common sense. The lessee has, without cause, abandoned the property. * * * He (the lessor) should not be penalized for attempting to minimize the damages nor for attempting to keep his property from deteriorating."

We believe that the third rule referred to by the Connecticut court, suggesting that there is no arbitrary standard to be invariably applied, best lends itself in doing justice in such controversies, and therefore align ourselves with it.

■ The question of surrender, being generally one of fact as to what was the intention of the parties, is to be determined from all of attendant circumstances including the conduct and expressions of the parties. The defendant DeJay having prevailed, is entitled to have us view the evidence and every fair inference and intendment arising therefrom in the light most favorable to it. And if when so regarded, there is any substantial evidence, or, as sometimes stated, any reasonable basis in the evidence, to support the finding made by the trial court, it will not be disturbed.

■ Cutler points to the testimony of the real estate agent as an indication that

2. 2 Utah 2d 250, 272 P.2d 173, 174.

3. See Owens v. Ramsey, 213 Ky. 279, 280 S.W. 1112, 52 A.L.R. 154; Armijo v. Pettit, 32 N.M. 469, 259 P. 620, 61 A.L.R. 773; 110 A.L.R. 368.

the parties did not intend to terminate the obligations of the lease. Mr. Solomon testified that, "Mr. Cantor advised Mr. Cutler that they [DeJay] in no way intended to discontinue recognizing their responsibility on the lease and the payments would be made in accordance with the lease." It is significant to note however, that the conference he referred to took place in February of 1952, before the several prospective tenants were rejected, and before the notice above referred to disclaiming further responsibility, relinquishing possession and delivering the keys to Cutler in July 1952.

In addition to serving the notice just mentioned and delivering the keys to Cutler, and the fact that Cutler placed "For Rent" signs in windows and advertisements in newspapers, none of which, it must be conceded, would by themselves be inconsistent with insistence that DeJay perform under the lease, there are additional circumstances to which the trial court could give consideration in divining the intent of the parties.

. In October, without notice to or obtaining the permission of DeJay Stores Cutler in its own name leased the premises to a political organization for a brief period. It properly proffers the proceeds thereof as a credit to DeJay Stores. Similarly, the preceding month, that is, September 1952, Cutler without notice to or in any way conferring with DeJay about the matter, allowed an appliance house, Bradley-Badger, to store furniture on the premises without charge. This continued for approximately 8 months until the latter, through later negotiations, became the permanent tenant of the premises. Unlike the other acts of the lessor Cutler as hereinabove recited, this action may well have been regarded by the trial court as an exercise of dominion over the premises to the exclusion of the tenant; that it was a use to comport with the desires of the lessor for his own benefit, and inconsistent with recognition of the rights of the tenant whom he now seeks to hold for the rental. It is immaterial whether we as a reviewing court would have found a surrender and acceptance had we been the triers of the facts. The test we apply is whether from the circumstances shown, reasonable minds could so conclude. We are of the opinion and hold that the circumstances here shown, all considered together, are such that we cannot say as a matter of law that there is no substantial evidence to support his finding.

In addition to the principal issue just treated, there are some subsidiary questions raised on this appeal.

■ The Cutler Association asserts that it is entitled to be reimbursed for a brokers fee paid in securing a new tenant the following spring. Since we sustain the trial court's finding that the obligations of the lease were terminated in September, it follows that the brokers' fee expended thereafter cannot be recovered.

■ Cutler next contends that since DeJay is a foreign corporation doing business

in this State, and having failed to qualify in compliance with Section 16–8–1 and 2, U.C.A.1953, it is barred from asserting defenses in this action because of section 16–8–3 which reads:

"Any foreign corporation doing business within this state and failing to comply with the provisions of section 16–8–1 and 16–8–2 shall not be entitled to the benefit of the laws of this state relating to corporations, and shall not sue, prosecute or maintain any action, suit, counterclaim, cross complaint or proceeding in any of the courts of this state * * *; and every contract, agreement and *transaction* whatsoever made or entered into by or on behalf of any such corporation within this state * * * shall be wholly void on behalf of such corporation * * *." (Emphasis added.)

It is argued that defendant's acts in serving notice and delivering up the keys to plaintiff, and in employing a real estate broker to procure a tenant for the premises are "transactions" within the meaning of the statute and hence "wholly void" on behalf of the defendant corporation, and that these "transactions" cannot be asserted by defendant so as to in any way defend in this suit. With this proposition we cannot agree. We have heretofore stated that this statute was not intended to prevent noncomplying foreign corporations from defending suits which are brought against them in this state.[4] The statute itself only purports to prevent affirmative relief on behalf of the foreigner and we think it would be an unreasonable and perhaps unconstitutional construction for us to interpret the statute so as to prevent the assertion of otherwise legitimate substantive defenses.

 Another problem concerns the allowance of damages against DeJay for injury to the premises allegedly caused in moving therefrom. DeJay's cross appeal challenges the propriety of this award as being unsupported by any evidence. The only evidence in the record concerning such item of damages came from Harold G. Cutter. He testified to certain defacing of the walls by removing fixtures which DeJay had installed. He affirmed that he had received a bid for repairs, and was then asked "What was the extent, the amount of the bid?" An objection was made on the ground that the answer would be hearsay, which the trial court sustained. Whatever may be said as to the character of this evidence, no proper foundation was laid for its admission and the court did not commit error prejudicial to the plaintiff in rejecting it. Notwithstanding the fact that such objection was sustained, the trial court nevertheless allowed Cutler $300 for repairs to the building. In the absence of any evidence as to value, it was

4. Clawson v. Boston Acme Mines Revelopment Co., 72 Utah 137, 269 P. 147, 59 A.L.R. 1318.

not the prerogative of the trial judge to personally appraise the damages and make an award therefor.[5] Accordingly we are compelled to modify the judgment as to that item.

■ The final question for consideration concerns the contention that the amount of $300 attorney's fees allowed the plaintiff was inadequate, particularly in view of this appeal, and Cutler now asks us to review this award and either increase it to a proper amount, or remit to have an adequate fee determined. No evidence was introduced concerning this matter but the parties stipulated at the trial that the court could determine the amount to be awarded. Under such circumstances it is permissible for the trial court, who as a lawyer and judge has special knowledge and experience concerning such matters, to take into consideration his own knowledge and to use his judgment as to the value of such services. But there being no evidence for us to review, it is more difficult to appraise the reasonableness of the judgment than if there had been evidence for comparison with it. Wherefore, unless the award were so grossly disproportionate to the value of services which must necessarily have been performed as reflected by the record, there would be no basis for disturbing the judgment. With respect to the contention that additional attorney's fees should be allowed because

of the appeal, the answer is found in the fact that the appeal has failed.

The judgment of the trial court is affirmed, except that the item of $300 awarded to the plaintiff for injury to the premises is stricken. Costs to respondent.

McDONOUGH, C. J., and HENRIOD and WORTHEN, JJ., concur.

WADE, Justice (concurring).

I concur, but I do not consider the excluded evidence of the amount of the bid for repairing the premises to be hearsay. I believe that a bona fide bid for making such repairs by a responsible person in the due course of his business is evidence which in reason and logic tends to prove the reasonable. value or cost of such repairs and that such a statement is not hearsay but is a circumstance which tends to prove a material issue in the case. Here plaintiff merely gave evidence that there was a bid but failed to show that it was bona fide, made by a responsible person or in the regular course of business and thus failed to establish sufficient foundation for its admission so it was properly excluded.

The lease agreement required the lessee to surrender the premises in as good repair as when it took them. Plaintiff's manager testified that after the premises were surrendered the plaster was damaged by the removal of fixtures which would require

5. See Weber Basin Water Conservancy District v. Moore, 2 Utah 2d 254, 272 P.2d 176.

filling and repainting, that he secured a bid from a painter for making such repairs but the court sustained objection to him stating the amount of such bid on the ground that it would be hearsay. At the time, plaintiff's counsel did not urge that the answer would not be hearsay but stated that the amount bid was $850 and that he would produce the bidder as a witness, which he failed to do.

It is generally recognized that all relevant evidence, that is evidence which in reason or logic tends to prove or disprove a material issue, is admissible unless excluded by some rule of evidence or by precedent.[1] The hearsay rule excludes only, "evidence of a statement which is made other than by a witness while testifying at a hearing offered to prove the truth of the matter stated."[2] Such a statement is not admissible because it would be used as testimony of the existence of the facts stated by a witness who does not purport to have personal knowledge of such facts and the person making such statement who has personal knowledge of such facts is not a witness subject to cross-examination.[3] However, if the fact of whether or not the statement was made is a material issue in the case, or the statement accompanies an ambiguous or equivocal act serving to complete and give it definite legal significance it is a verbal act which constitutes a material fact in the case or if the fact that such statement was made is a circumstance which tends to prove a material issue in the case such a statement is not being used as testimonial evidence of the statement made on the credit of the person making the statement who is not a witness and therefore is not hearsay evidence. Where the "question is not whether the statements are true, but whether they were made"[4] such statements are not excluded by the rule against hearsay. On this question Wigmore says:[5]

"The theory of the Hearsay rule (ante, § 1361) is that, when a human utterance is offered as evidence of the *truth of the fact asserted in it*, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test

---

1. See Uniform Rules of Evidence, drafted by the National Conference of Commissioners of Uniform State Laws, Rule 1(2) and comment thereon and Rule 7(f) and comment; American Law Institute's Model Code of Evidence, Rule 1(12) and comment thereon and Rule 9(f) and comment. Also see 1 Wigmore on Evidence, 3d Ed., secs. 9, 10, 12 and 13; Thayer's Preliminary Treatise, 265–8. Also State v. Scott, 111 Utah 9, 175 P. 2d 1016; State v. Neal, Utah, 254 P.2d 1053, at page 1056.

2. Quoted from Uniform Rules of Evidence, Rule 63, see comment to that rule and 5 Wigmore on Evidence, 3d Ed., secs. 1361, 1362, 1363, 1364.

3. See reference to Wigmore on Evidence in note 2.

4. See United States v. Roberts, 62 F.2d 594.

5. See 6 Wigmore on Evidence, 3d Ed., sec. 1766, at pages 177, 178 and 180.

116

of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the Hearsay rule does not apply. The utterance is then merely not obnoxious to that rule. It may or may not be received, according as it has any relevancy in the case; but if it is not received, this is in no way due to the Hearsay rule.

\* \* \* \* \* \*

"The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excluded extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*

\* \* \* \* \* \*

" \* \* \* The classes of utterances thus exempt may be grouped under three heads:

"1. Utterances material to the case as a part of the issue;

"2. Utterances accompanying an *ambiguous or equivocal act, itself material,* and serving to complete the act and give it definite legal significance; i. e. *verbal parts of an act;*

"3. Utterances used *circumstantially,* as giving rise to indirect inferences, but not as assertions to prove the matter asserted."

On the question of a verbal act that author says:[6]

"A second kind of situation in which utterances are *not* offered testimonially arises when the utterance *accompanies conduct to which it is desired to attach some legal effect.* The conduct or act has intrinsically no definite significance, or only an ambiguous one, and its whole legal purport or tenor is to be more precisely ascertained by considering the words accompanying it. The utterance thus enters merely as a verbal part of the act, or, in the common phrase, a 'verbal act.'

\* \* \* \* \* \*

"Thus the words are used in no sense testimonially, i. e. as assertions to evidence the truth of a fact asserted in them. On the one hand, therefore, the Hearsay rule interposes no objection to the use of such utterances, because they are not offered as assertions (ante, § 1766). On the other hand, so far as they may contain assertions, these are not to be used or argued about testimonially, nor believed by the jury; for this would be to use them in violation of the Hearsay rule. In short, the utterances enter *irrespective of the*

6. See 6 Wigmore on Evidence, 3d Ed., sec. 1772, pp. 190–1.

*truth of any assertion they may contain;* and they neither profit nor suffer by virtue thereof."

On utterances or statements used as circumstantial evidence of a material issue he says:[7]

"The Hearsay rule forbids merely the use of an extrajudicial utterance as an assertion to evidence the fact asserted (ante, § 1766). Such a use would be testimonial, i. e. we should be asked to believe the fact because Doe asserted it to be true, precisely as we should be asked to believe Doe's similar assertion if made on the stand. What the Hearsay rule forbids (ante, § 1361) is the use of testimonial evidence—i. e. assertions—uttered not under cross-examination. If, then, an utterance can be used as circumstantial evidence, i. e. without inferring from it as an assertion to the fact asserted (ante, § 25, 245), the Hearsay rule does not oppose any barrier, because it is not applicable."

As an illustration of what is and what is not hearsay evidence of value, Wigmore points out that knowledge of value must generally be acquired by personal observation not hearsay. That instances of offers and acceptances of prices, averaged into a mean figure are what constitute value. That statements of persons declaring the prices they offer to give or receive are not taken on the credit of such persons as truthworthy assertions of value, but are items of conduct which in themselves make up what we call value. He then says:[8]

" * * * Thus, if A sits in a merchant's office and listens to the terms accepted and rejected for a dozen articles, he acquires a first-hand knowledge of value; but if he goes in and asks the merchant to tell him the value of a given article, his knowledge is based on a belief in the truth of the merchant's assertion. In the former case, his knowledge is not based on hearsay. But in the latter case his knowledge is based on the hearsay assertion of another person, and therefore is inadmissible (under the principle of § 657, ante). The distinction depends upon whether the utterances heard represent in themselves a series of individual offers or transactions, or are merely reports of the net result of offers or transactions already made."

Under this test the amount of the bid which the excluded answer called for was not hearsay evidence. It constituted a part of a transaction between the witness, plaintiff's manager, and the bidder, it did not call for an estimate or an opinion by the bidder of the reasonable value or cost of making such repairs nor a report by the

---

7. See 6 Wigmore on Evidence, 3d Ed., sec. 1788, at page 234.

8. See 3 Wigmore on Evidence, 3d Ed., sec. 719 at page 52.

bidder of other transactions but was a direct offer by the bidder to do the job for a specified price. Such an offer is one of the constituents or an inherent part of the transactions which constitute value. Thus it constitutes one of the elements of a material issue in the case and is not hearsay evidence.

Here the excluded answer in substance and effect would have been that the bidder said: I offer or make a bid to repair the damages for $850. It was not offered to show on the credit of the person making the statement that the fact stated was true. The making of such statement by the bidder to plaintiff's manager in law constituted the making of a bid for that amount, and whether or not the bidder made such a statement was within the personal knowledge of the witness who was available for cross-examination. However, whether such a bid was made was not the issue which this evidence was offered to prove, that question was material only as circumstantial evidence of the reasonable cost of making such repairs, otherwise, whether such an offer was made was immaterial in this case. The question called for no statement by the bidder of his opinion or knowledge of the reasonable cost of making such repairs. Such answer could only show the reasonable cost of such repairs by circumstantial but not by testimonial evidence or as one of the elements or integral parts which go to establish such reasonable cost or value. Thus such evidence is not hearsay.

As we have seen this statement which was excluded as hearsay was not an expression of the bidder's opinion of the reasonable value or cost of such repairs but was a circumstance which tends to show such value or cost. However, the amount of the bid was based on and indirectly indicated the bidder's opinion of what the amount of such value or cost would be. It might be inadmissible if offered only to show the bidder's opinion of what the amount of such cost or value would be for the rule against hearsay has been held to exclude implied as well as express assertions.[9] If the proper foundation were laid

9. See leading English case of Wright v. Tatham, 5 Cl. & F. 670, 739, (1838) and same case at 7 Ad. & El. 313; Wigmore on Evidence, sections 267, 268–273 and 459, where he seems to confine the hearsay rule to "utterances"; Hinton, State of Mind and the Hearsay Rule, 1 U. of C.L.Rev. 394–423; and McCormick on Evidence, § 229, where after discussing the cases and views of text-writers and commentators concludes: " * * * The present writer believes, accordingly that much the more viable path to improvement is the alternative theory which would limit hearsay to assertions, namely to statements, oral or written, or acts intended to be communicative, such as signals and the sign-language, when offered to prove the truth of the facts asserted. Other acts and conduct, including silence, when offered to show belief to prove the fact believed, would be classed (as many decisions have classed it) as circumstantial evidence."

* * * * *

"This approach is adopted by the decisions, forming a numerous though a minority group, which decline to treat

this evidence would have an additional value beyond merely indicating the bidder's opinion on the amount of such value or cost it would also show that he was willing to risk undertaking the liability to make such repairs for the amount of such bid in case it was acceptable to the owner. The making of such bids and the acceptance of one of them are the ingredients which determine and constitute the reasonable value or cost of such repairs for reasonable value or cost of such repairs is the price required to obtain them on the open market. Thus, such evidence is a circumstance which in reason and logic tends to show such value and is admissible as such even though it also indicates the opinion of the bidder on the amount of such value or cost and might wrongfully be considered as testimonial evidence of the bidder's opinion of the reasonable value or cost of making such repairs. For evidence which is admissible for one purpose, having satisfied all the requirements for admissibility in that capacity is not inadmissible because it does not satisfy the requirements of admissibility under some other rule. This is called the multiple admissibility rule,[10] and has been accepted by this court.[11] Of course in a jury case the court should instruct the jury that such evidence should be used only as circumstantial evidence and not as testimonial evidence of the bidder's opinion, and in a non-jury case the judge should keep this distinction in mind in determining the facts.[12]

We have yet to consider whether evidence of such bid is relevant to the issue of what is the reasonable market value or cost of such repairs. "Market Value" is said to be "the price which would be agreed upon at a voluntary sale between an owner willing to sell and a purchaser willing to buy." [13] Although this definition was used with reference to the market value of property the same principles apply to this case where we are concerned with the reasonable market value or cost of such repairs. On the question of value of property Wigmore says: [14]

conduct as hearsay, see notes, 16–25, supra. It is persuasively advocated by Murchison, 24 N.C.L.Rev. 274, 282 (1946). This seems also to be the view adopted in Uniform Rule 62(1), which includes in the definition of statement 'non verbal conduct * * * intended * * * as a substitute for words in expressing the matter stated,' and Rule 63, which limits 'hearsay' to 'statement.' "

10. See 1 Wigmore on Evidence, 3d Ed., sec. 13, pp. 299 to 303; 6 Wigmore on Evidence, 3d Ed., sec. 1790, pp. 237 to 240.

11. See State v. Green, 89 Utah 437, at page 452, 57 P.2d 750; State v. Nemier, 106 Utah 307, 148 P.2d 327; State v. Scott, 111 Utah 9, 175 P.2d 1016; State v. Cooper, 114 Utah 531, 201 P.2d 764, at page 768; State v. Neal, Utah, 254 P. 2d 1053, at page 1056.

12. See note 10 supra.

13. See Kennecott Copper Corp. v. Salt Lake County, Utah, 250 P.2d 938, at pages 940, 942.

14. See 2 Wigmore on Evidence, 3d Ed., sec. 463 at page 503.

"* * * For evidential purposes, Sale-Value is nothing more than the nature or quality of the article as measured by the money which others show themselves willing to lay out in purchasing it. Their offers of money not merely indicate the value; they *are* the value; i. e. since value is merely a standard or measure in figures, those sums taken in net potential result are that standard."

If there were a reasonable number of bids, including one which was accepted by the owner seeking such repairs in the absence of any compulsion, the reasonable market value or cost of such repairs would be established. One bid, although far from conclusive, is an important integral part of such process and if shown to be a bona fide bid made in the due course of business by a reliable and competent bidder it would tend to show the reasonable market value or cost of such repairs and therefore would be relevant and admissible. We must keep in mind that here we are dealing only with admissibility and not with the weight or credibility of such evidence.

The use of bids in determining the value or cost of construction and repairs is very widespread in business and governmental affairs and courts receive without question the amount paid or agreed to be paid for the repair of damaged property. While such evidence is much stronger than evidence of one unaccepted bid it is admissible on the same principle both as to relevancy and hearsay. Some courts, failing to note the distinctions herein pointed out have held such evidence hearsay while also emphasizing its weaknesses and pointing out that it might cause confusion by bringing in collateral issues, especially where the bid was for other property.[15] Others have held that a bid on the property involved in the action is admissible [16] and some have excluded such evidence on the ground that a proper foundation had not been laid.[17] As previously stated sufficient foundation was not laid in this case and the evidence was properly excluded.

15. Yellowstone Park R. Co. v. Bridger Coal Co., 34 Mont. 545, 87 P. 963, where evidence of offers for other lands were excluded stating all of the above mentioned grounds, however the proof offered is not sufficiently stated to show whether or not it was hearsay, this case admitted evidence of an offer for the land involved in the case on another ground. On the question of collateral issues see State, By and Through Its Engineering Comm. v. Peek, 1 Utah 2d 263, 265 P.2d 630.

16. See Heiner v. Crosby, 3 Cir., 24 F.2d 191, at page 193; Appeal of Pennsylvania Co., etc., 282 Pa. 69, 127 A. 441, at page 444; Harrison v. Glover, 72 N.Y. 451; Kankakee Park District v. Heidenreich, 328 Ill. 198, 159 N.E. 289; Tharp v. Massengill, 38 N.M. 58, 28 P.2d 502, 504; Arts v. Jones, 196 Ark. 1177, 118 S.W.2d 574; Christopher v. Musolino, 241 Mass. 202, 135 N.E. 124; Youssoupoff v. Widener, 246 N.Y. 174, 158 N.E. 64.

17. Jefferson Park District v. Sowinski, 336 Ill. 390, 168 N.E. 370; Wiget v. Becker, 8 Cir., 84 F.2d 706.