## CLAWSON v. BOSTON ACME MINES DEVELOPMENT CO., et al.

No. 4541.  Decided February 11, 1928.  On Rehearing, July 10, 1928.
(269 P. 147.)

138

*P. G. Ellis*, of Salt Lake City, for appellants.

*P. C. Evans* and *E. A. Walton*, both of Salt Lake City, for respondent.

THURMAN, C. J.

The plaintiff, as assignee of certain alleged claims against the defendants, instituted this action to enforce the collection of said claims.

The defendant Boston Acme Development Company is an Arizona corporation, and the defendant Boston Acme Mines Corporation is a Delaware corporation. These companies will hereinafter be called the development company and the mines company.

It is alleged in the complaint that prior to May, 1919, the mines company was the owner of certain properties and mining interests in Morgan county, Utah, with the mining machinery, equipment, and fixtures used in operating its mining properties in said county; that the development company was organized as a subsidiary corporation, having officers and stockholders in common with the mines company; that, on or about May 12, 1919, the mines company sold to the development company its properties in Utah, including the mining machinery, etc., and received in consideration therefor the entire capital stock of the development company, which was the sole consideration for the transfer of said property. It is then alleged that the sale of said property was made in the city of Baltimore, and was unknown to plaintiff, or to his assignors, M. K. Tavenner and Hattie A. Tavenner, until long after the defendants had become indebted to the said Tavenners; that the conveyance was made secretly, and knowledge thereof withheld from subsequent creditors, and particularly the plaintiff and his

said assignors, who dealt with the mines company believing that it owned the aforesaid properties.

It is further alleged that the mines company did not comply with the requirements of the Utah statutes to authorize it to do business in Utah, by filing a copy of its articles of incorporation with the secretary of state of Utah, and that it has always been a foreign corporation without authority to do business in the state of Utah; that the development company, although at one time authorized to do business in Utah, has heretofore forfeited its charter, and no longer has the status of corporate capacity in the state of its domicile.

Plaintiff then alleges that between July 15, 1918, and February 3, 1925, M. K. Tavenner performed services for defendants in managing their property in Utah, and that there is a balance due him for said services in the sum of $1,000; that Hattie A. Tavenner advanced to the defendants at their special instance and request in the year 1919 the sum of $1,600, and thereafter made other advances from time to time, specifying the particulars thereof; that all of said advances so made by Hattie A. Tavenner to said defendants aggregated the sum of $2,343.10, and that nothing has been paid thereon.

It is then alleged that for a valuable consideration M. K. Tavenner and Hattie A Tavenner assigned all of said claims to the plaintiff.

Finally, it is alleged that the sale of the said property by the mines company to the development company was without consideration, and was made for the purpose of defrauding both the existing and subsequent creditors of the mines company, and particularly the plaintiff and M. K. Tavenner and Hattie A. Tavenner.

Plaintiff prays judgment for the total amount of said claims in the sum of $3,343, with interest thereon and costs, and that the sale of said property be set aside as being in fraud of existing and subsequent creditors.

The mining machinery and equipment of the defendants were attached by plaintiffs, and summons issued and served

on both defendants. Service was made by the sheriff by delivering a copy thereof to E. J. Klem, manager and director of the development company and a director of the mines company. On motion of the defendant mines company, the summons as to it was quashed on account of insufficient service. Plaintiff thereafter filed an amended complaint against the defendants in two causes of action; the first based upon the claim of M. K. Tavenner, and the second on the claim of Hattie A. Tavenner. The first cause of action alleges substantially the same facts as are alleged in the original complaint, except that the claim, instead of being for the sum of $1,000 for services rendered the mines company, as its manager, it alleged an agreement with the mines company by which it was to pay the hotel expenses of the said M. K. Tavenner and his wife, Hattie A. Tavenner, while M. K. Tavenner was acting as manager for said company. And it is alleged that such expenses from January 1, 1921, to September 1, 1921, amounting to the sum of $850.95, have not been paid by said defendants, and that the said amount is due and owing.

The second cause of action, based upon the claim of Mrs. Tavenner, alleges substantially the same facts as are alleged in the first cause of action, except that it is alleged that the money advanced by her was advanced to the defendant mines company alone instead of being advanced to both defendants. The aggregate amount of her claim, however, is the same.

It thus appears from the amended complaint that the indebtedness alleged in each cause of action is against the mines company only, but judgment is prayed for against both defendants that the attempted sale from the mines company to the development company be declared void and held for naught as against existing and subsequent creditors, and particularly as to the said M. K. Tavenner and Hattie A. Tavenner. Otherwise the prayer is against the mines company for the aggregate amount of the claims.

Service of the summons upon the mines company was made by publication. Motion to quash the summons for insufficient service was again interposed by the defendant mines company and denied. The defendant mines company stood on its motion to quash and declined to further plead. Its default in that regard was duly entered.

The defendant development company, answering plaintiff's complaint, alleges that neither of said causes of action states sufficient facts to constitute a cause of action. Further answering, said defendant admits that prior to May, 1919, the mines company was the owner of the property in question, including the mining machinery referred to in the complaint; admits that this defendant was organized by persons theretofore interested in the mines corporation, and that thereafter they had certain directors in common; admits that the mines company sold all its property interests in Utah, including said mining machinery, to this defendant; denies that there was never a change of possession thereof, or that any persons dealing with the mines corporation and entitled to notice, including plaintiff and his assignors, did not have notice thereof; denies that plaintiff and his assignors are or were creditors of the mines company at the time of such sale; and denies that they, or either of them, have now, or had at any time, any interest in said property, or that they, or either of them, were entitled to notice of such sale; denies the transfer of said property was conducted secretly, or that knowledge thereof was withheld from any creditor or other person entitled thereto; admits that M. K. Tavenner was employed by the mines corporation for a time, not as manager, but in a special capacity only, and that such employment terminated in March, 1921; admits that Tavenner and his wife resided at plaintiff's hotel during some of the period alleged, and that Tavenner paid his hotel bill from funds of the company in his hands. Defendant denies every other allegation in said first cause of action.

For a defense to the second cause of action, defendant admits, denies, and alleges as to each and every paragraph

thereof the same as in its answer to the first cause of action, in so far as the allegations are substantially the same. Upon information and belief denies every one of the agreements, transactions, claims, matters, and things alleged as the basis of the claims of Hattie A. Tavenner, and denies every allegation not specifically admitted. As a further defense, defendant alleges the circumstances and conditions attending the sale of the property, including the mining machinery. In view of the finding, these matters are immaterial.

As further defenses, defendant separately pleads in bar the following statutes of limitation: Compiled Laws of Utah 1917, §§ 6466, 6467, 6468, subd. 3, and section 6468, subd. 4.

As a further defense, defendant alleges that plaintiff's assignors were fully paid by defendant mines corporation all lawful claims and demands at any time accruing to them prior to the alleged transfer and assignment of their claims to the plaintiff.

For a further defense, defendant alleges a former adjudication af all matters relating to the validity of the sale and transfer of the mining machinery involved in this action. That case was tried in the district court of Salt Lake County, and appealed to this court. See *Boston Acme Development Co. v. Clawson,* 66 Utah 103, 240 P. 165, for full particulars. In view of the findings in this case, it is unnecessary to make a further statement of this defense in this connection.

As a further defense to plaintiff's amended complaint, defendant alleges that the same is a departure from the matters alleged in the original complaint, that this defendant moved to strike the same and dismiss the action, and that the court has no jurisdiction to hear the causes of action alleged in the amended complaint.

Defendant alleges as a further defense, denominated its sixth defense, to each cause of action. It covers several pages of the printed abstract, and purports to cover the dealings of the defendant companies with the Tavenners from the year 1919 to and including the year 1920. The

purport of the defense is to show a mutual current account between the defendants and the Tavenners, in respect to which, when an accounting is had, it will be found that there is a balance due the defendants more than sufficient to offset the alleged claims of plaintiff's assignors. It is alleged that the Tavenners, although requested often, have refused to render an account of money placed in their hands by defendants. Further details as to this defense, if deemed necessary, will be stated in its proper connection in the course of the opinion.

Defendant development company therefore prays that an accounting be required of the Tavenners' dealings with the defendants; that the amended complaint be dismissed; that plaintiff take nothing thereby; and that he be restrained from asserting any claim of right, title, or interest in the property attached and from further disputing defendants' title thereto. Defendant also prays for costs and for general relief.

Plaintiff, in reply, denies each and every allegation of the answer inconsistent with plaintiff's amended complaint. Plaintiff especially denies each and every plea of the statute of limitations asserted in bar by the defendant. Further allegations and denials in the reply are not necessary to be stated, in view of the findings made by the court.

Near the close of the evidence, the court intimated his opinion that upon the entire case made by plaintiff, as the evidence then stood, the case rested upon that part of the complaint alleging an indebtedness to Hattie A. Tavenner. Thereupon plaintiff moved to dismiss the first cause of action without prejudice. Defendant objected because the answer alleged a counterclaim. The court reserved its ruling. In view of a further ruling of the court that both defendants were liable as to the claim of Hattie A. Tavenner for the sum of $1,500 advanced to the defendants, the plaintiff asked leave, and was permitted, to amend his amended complaint by interlineation so as to hold both de-

fendants personally liable for such indebtedness. To the ruling of the court, defendant excepted.

The case being finally submitted, the court granted plaintiff's motion to dismiss his first cause of action without prejudice. Exception by defendant.

The case was tried to the court without a jury. The court found that the defendants were foreign corporations, and that the mines company had not complied with the statutory requirements as to foreign corporations, and had failed to file with the secretary of state a copy of its articles of incorporation or to appoint a service agent, or otherwise to conform to the requirements of law applying to foreign corporations doing business within the state of Utah. The court further found that the mines company acquired by purchase certain mining properties and mining interests in the state of Utah, particularly in Morgan county in said state, and also acquired mining machinery, equipment, and fixtures which it used in operating its said mining properties in Utah, and that on or about May 7, 1919, the development company was organized for the purpose of taking over said property; that both of said companies had officers and stockholders in common, and that the purpose was to make the development company an operating company; that on or about May 12, 1919, the mines company sold to the development company all of its property and mining interests in the state of Utah, including said mining machinery, equipment, and fixtures, and in consideration for the transfer of said properties the development company agreed to deliver to the mines company the whole issue of its capital stock, and that there was no other consideration for said sale; that the transfer was made in Baltimore, Md., and the capital stock of the development company was never within the jurisdiction of the state of Utah; that prior to and at the time of said transfer M. K. Tavenner was a director of the mines company and also its local manager; that Hattie A. Tavenner was in the employ of said M. K. Tavenner in keeping the books and accounts of the said

mines company; that, after the organization of the development company and the transfer of the Utah properties to said company the said Tavenners continued in the employ of the mines company and the development company, or whichever company was engaged in doing business and operating said properties; that the business had been carried on from 1918 until May, 1919, by the mines company and after the organization of the development company the business was still continued in the name of the mines company until the suspension of work in 1920; that in 1919, in June, July, and August, Hattie A. Tavenner, after she had notice of said transfer, advanced and loaned to the defendants various sums aggregating the sum of $1,500; that defendants agreed to pay the same, but that no part thereof has been paid; that she assigned all her right, title, and interest in and to said claim to the plaintiff, together with her right to sue thereon, and that plaintiff is now the lawful owner thereof. The court further found that plaintiff's cause of action was not barred by any statute of limitations, also that defendants' sixth defense in the nature of a counterclaim in which they claim to be entitled to certain credits, drawbacks, and set-ofs is without merit as against plaintif's assignor, Hattie A. Tavenner, and that there is no sum due from her to the defendants or either of them; that plaintiff's action is not barred or concluded by the judgment entered in the district court of Salt Lake county in the case of *Boston Acme Mines Development Company* v. *Clawson* pleaded in bar by said defendants. It was also found by the court that the mining machinery attached in this action was the property of the defendants.

Conclusions of law and judgment were entered in favor of the plaintiff for the sum of $1,500, and interest thereon at 8 per cent per annum from August 14, 1919, and costs, and that the property attached at the commencement of the action be sold, and its proceeds be applied in so far as they may be, in satisfaction of the judgment.

The defendant mines company appears specially in this

court by appeal for the purpose of contesting the jurisdiction of the district court to enter any judgment against it, and the development company appeals for all purposes. Many errors are assigned separately by each of the defendants. We will first consider the errors assigned by the development company, and, while considering them, the word "appellant," when used, will apply to the development company only.

Appellant assigns as error finding No. 9, wherein the court found, "that the said cause of action is not barred by any statute of limitations." The court found that the money was advanced to the defendants by Hattie A. Tavenner in June, July, and August, 1919, and that the last installment was on August 14th of that year. The evidence tends to show that the money was to be repaid within a week or ten days. The complaint was filed September 17, 1925, and summons issued thereon. Defendant pleaded in bar the following sections of Compiled Laws of Utah 1917: Section 6466, by which an action upon a contract obligation or liability founded upon an instrument in writing, except those mentioned in preceding sections, is barred in 6 years; section 6467, by which an action upon a contract obligation or liability not founded upon an instrument in writing is barred in four years; section 6468, subd. 3, by which an action for taking, detaining, or injuring personal property involving actions for the specific recovery thereof, is barred in three years (the provisos in said subdivision are not material here) ; also subdivision 4 of the same section, by which an action for relief on the ground of fraud or mistake is barred in three years after discovery by the aggrieved party of the mistake or fraud. The bar was pleaded by defendant as provided in section 6602 of the same compilation.

The plaintiff's reply to the above plea in bar was as follows:

"Plaintiff controverts and specially denies each and every plea in said answer asserting a plea of any statute of limitations."

As we have seen, the finding of the court was substantially in the same form. Appellant assigns the finding as error, and alleges there is no evidence to support the finding and also contends that plaintiff's attempted denial of the several pleas in bar, if good at all, amounts only to a denial that the time within which the action could be commenced had not expired.

The evidence in the case is conclusive that the statutes pleaded in bar by defendant had run at the time the plaintiff commenced this action. Plaintiff does not contend that the statutory period had not expired, but the ■ contention is that the defendant being a foreign corporation, was not entitled to plead the statute of limitations in bar, especially as there is no evidence, as plaintiff contends, that the defendant had complied with the laws of the state authorizing it to do business in the state of Utah. To this contention the defendant replies, first, that there is evidence that the defendant complied with the laws of Utah authorizing it to do business in the state; and, second that in any event the burden was on the plaintiff to plead noncompliance in his reply to appellant's plea in bar, and furnish evidence in support thereof, both of which plaintiff failed to do; and, finally, it is contended that appellant had the right to plead the statutes in bar, even if it were a non complying corporation.

Assuming that appellant is a noncomplying foreign corporation, we do not consider it as controlling in the instant case, but, as the question is elaborately discussed in the briefs of both appellant and respondent, we are inclined to give it a brief notice from the standpoint of authority.

In 13 Ency. of Law (2d Ed.) at pages 904, 905, it is said:

"The courts are not at all in accord as to whether a foreign corporation is under any circumstances a resident of the domestic state in the sense that it may avail itself of the local statute of limitations in suits against it. Some courts hold without qualification that a foreign corporation cannot set up the statute of limitations as a de-

fense when sued in the domestic courts, and that it makes no difference that the corporation owns property in the state, conducts business there, and has a managing agent residing and keeping an office in such state. The majority of decisions maintain a rule which it is believed is more consonant with justice. The rule, briefly stated, is that if, under the laws of the domestic state, the corporation has placed itself in such position that it may be served with process, it may avail itself of the statute of limitations when sued. Ability to obtain service of process, it may avail itself of the statute of limitations when sued. Ability to obtain service of process is the test of the running of the statute of limitations."

The authorities for and against the propositions stated in the text are cited in the note.

In *Volivar* v. *Richmond Cedar Works,* reported 152 N. C. 656, 68 S. E. 200, in 21 Ann. Cas. at page 623, after referring to cases to the contrary, the court says:

"We are now of opinion that these last cases are not well decided and that the better doctrine, more consonant with reason and justice, is that expressed in the citation from *Williams* v. *Iron Belt Bld., etc., Ass'n.* The overwhelming weight of judicial precedent recognizes the doctrine as expounded by the Supreme Court of Iowa in *Wall* v. *Chicago, etc., R. Co.,* 69 Iowa 501, 29 N. W. 427: 'The theory of the statute of limitations is that it operates to bar all actions except as against persons and corporations upon whom notice of the action cannot be served because of their nonresidence. If such notice be served and a personal judgment obtained which can be enforced in the mode provided by law against the property of such person or corporation, wherever found, then such person or corporation is not a nonresident as contemplated by the statute of limitations.' "

Many cases are cited in the note in support of the text.

As we understand the brief of respondent, the above rule is not controverted, but his contention is that the burden was upon appellant to prove it had complied with the laws of the state authorizing it to do business therein. Appellant challenges that proposition, and insists that the burden was on respondent to prove that appellant had not complied with the law. In support of respondent's contention, his

counsel cite and rely on *O'Brien* v. *Big Casino Mining Co.*, 9 Cal. App. 283, 99 P. 209; *Pierce* v. *Southern Pacific Co.*, 120 Cal. 156, 47 P. 874, 52 P. 302; 40 L. R. A. at page 350; 37 C. J. 1000.

There is no doubt the California cases above cited hold, as contended by respondent, that the burden of proof in this class of cases is upon the party pleading the statute. But those cases were decided under a statute materially different from our own. The California Civil Code, §§ 405 and 406, read as follows:

"405. Every corporation other than those created by or under the laws of this state must, within forty days from the time it commenced to do business therein, file in the office of the secretary of state a designation of some person residing within the state upon whom process issued by authority of or under any law of this state may be served. A copy of such designation, duly certified by the secretary of state, is sufficient evidence of such appointment. Such process may be served on the person so designated, or, in the event that no such person is designated, then on the secretary of state, and the service is a valid service on such corporation.

"406. Every corporation which complies with the provisions of this chapter is thereafter entitled to the benefit of the laws of this state limiting the time for the commencement of civil actions, but no corporation not created by or under the laws of this state is entitled to the benefit thereof, nor can any such corporation maintain or defend any action or proceeding in any court of this state until the corporation has complied with the provisions of the preceding section."

It thus appears from the sections quoted that the privilege of pleading the statute of limitations or of making any other defense to an action by a foreign corporation in California is granted upon the express condition that such corporation comply with the provisions of the statute.

No such conditions are imposed by the Utah statutes. Compiled Laws of Utah 1917, §§ 945 and 947, as far as applicable here, read as follows:

"945 [as amended by Sess. Laws, 1919, p. 27]. All corporations, * * * not organized under the laws of this state, before doing any

business within the state, shall file with the county clerk of the county in which their principal office in the state may be situated, a copy of their articles, by-laws and amendments certified by the secretary of state of the state wherein the same are incorporated, together with an acceptance of the provisions of the Constitution of the state, and designation of some person residing in said county upon whom all legal process may be served; and within ten days thereafter shall also file with the secretary of state copies of all the foregoing duly certified by such county clerk."

"947. Any such corporation failing to comply with the provisions of section 945 shall not be entitled to the benefits of the laws of this state relating to corporations, and shall not sue, prosecute, or maintain any action, suit, counterclaim, cross-complaint, or proceeding in any of the courts of this state, on any claim, interest or demand arising, or growing out of, or founded on any contract, agreement, or transaction made or entered into in this state by such corporation or by its assignor, or by any person from, through, or under whom it derives its interest or title or any part thereof. * * *"

The difference between the California statute and the Utah statute is so palpable from even a casual reading thereof as to require but little comment to show that the decisions thereunder have no application. As before stated, the right of a foreign corporation to plead the statute of limitations or make any other defense under the California statute is granted upon the express condition that it comply with the provisions of section 405 of the California Civil Code, above quoted.

The Utah statute, section 947, only prohibits a noncomplying corporation from prosecuting or maintaining any action, suit, counterclaim, or cross-complaint in any court of the state. It does not prohibit such corporation from defending an action brought against it. Unless there is some statute of the state, other than sections 945 and 947 above quoted, that prohibits a foreign corporation from pleading the statute of limitations in bar of an action instituted against it, it cannot be logically contended that it is incumbent upon such corporation to assume the burden of proving that it has complied with the provisions of the statute authorizing it to do business in the state.

Compiled Laws of Utah 1917, § 6479, and sections following, purport to state the various conditions and circumstances which toll the statute of limitations. There is no condition tolling the statute as to foreign corporations. Expressio unius est exclusio alterius.

On the face of the pleadings and by the uncontradicted evidence in the case, the time within which to bring the action had expired before the action was commenced, and, unless there was something to toll the statute, the pleas in bar, which cite the sections of the statute relied on, were good, and it was incumbent on the plaintiff, in reply, to state the condition which tolled the statute, if such condition existed. Such, in our opinion, is the plain meaning of Compiled Laws 1917, § 6590, which states when a reply is necessary and what it shall contain. The section reads:

"There shall be no reply except:

"Where a counterclaim is alleged; or,

"Where some matter is alleged in the answer to which the plaintiff claims to have a defense, by reason of the existence of some fact which avoids the matter alleged in the answer. When a reply must be filed, it shall be served and filed within ten days after the service of the answer or of notice of the overruling of a demurrer, and it shall consist of:

"First. A general or specific denial of each allegation or counterclaim controverted, or any knowledge or information thereof sufficient to form a belief; or,

"Second. Any new matter not inconsistent with the complaint constituting a defense to the matter alleged in the answer; or the matter in the answer may be confessed, and any new matter alleged, not inconsistent with the complaint, which avoids the same."

Our attention has not been called to any decision of this court involving this precise question, but, in the case of *Tate* v. *Rose,* 35 Utah, at page 233, 99 P. 1004, the court uses the following language:

"In case the time required by the statute to bar an action has run against the plaintiff, and he desires to show that, notwithstanding such fact, the action, nevertheless, is not barred by reason of a new

promise made by, or the nonresidence of, the defendant, by reason of which he seeks to avoid the plea of the statute of limitations, then a reply setting forth these facts may be necessary."

Respondent cites cases in 37 C. J. p. 1000, but does not call out attention to the particular cases relied on. Numerous cases are cited in the note, some of which make more against respondent's contention than in his favor. In such circumstances we shall impose upon the reader the burden of determining the cases relied on.

We are clearly of opinion that plaintiff's reply to defendant's plea of the statute of limitations was insufficient to negative the plea or to raise any issue thereon except that the time within which the action could be commenced had not expired. ■

Appellant's third and last contention concerning this question is that there is no statute in Utah prohibiting even a noncomplying corporation, when sued, from pleading in bar the statute of limitations. ■

As the statute, section 947, does not prohibit a foreign corporation from defending an action brought against it, and as no exception is made in the statute of limitations depriving noncomplying foreign corporations of the right to plead such statute, it would seem to follow as a necessary corollary from what has been said that such corporations have the right to plead the statute the same as natural persons and corporations which have complied with the law. It seems to us it would be judicial legislation on our part to undertake to create an exception in addition to those enacted by the Legislature, when the Legislature itself has apparently undertaken to cover the entire field in that respect.

There appears to be but little authority upon this subject. In 14A C. J. at page 1312, relating to corporations, it is said:

"A statute merely prohibiting the commencement, maintenance, or prosecution of an action does not prevent a foreign corporation which

has not complied with the statute from defending a suit brought against it."

Only one case is cited in the note, *Blodgett* v. *Lanyon Zinc Co.*, 120 F. 893, 58 C. C. A. 79 (Kansas statute). Paragraph 3 of the headnotes in the case states the rule as follows:

"The prohibition by a state of the maintenance of actions in its courts by a foreign corporation does not prohibit or limit the right of that corporation to maintain such actions in the national courts, nor does it forbid the corporation from defending actions in the state courts."

In *Turcott* v. *Yazoo & M. V. R. Co.*, 101 Tenn. 102, 45 S. W. 1067, 40 L. R. A. 768, 70 Am. St. Rep. 661, the second headnote says:

"The failure of a foreign corporation to file its charter as required by Act 1891, c. 122, will not deprive it of the right, when sued, to plead the bar of limitations against the action."

There is much force in the contention of appellant that to deprive even a foreign corporation of the right to defend against an action brought against it would savor strongly of unconstitutionality. We doubt if that would be true as to the defense of the statute of limitations, but even as to such defense, it would seem that such corporation is entitled to it, where there is no express statute withholding the right.

We cannot avoid the conclusion that the court erred in finding that plaintiff's cause of action was not barred by the statute of limitations, and that for such error the judgment in favor of the plaintiff and against the development company should be reversed.

There is, however, another question that should be determined affecting the interests of this appellant. Through some inadvertence on the part of the plaintiff who drew the findings at the request of the court, there is apparently an irreconcilable conflict therein, which

was overlooked by the court. In the third finding, the court found that on May 12, 1919, the mines company sold to the development company all its property and mining interests in the state of Utah, including the mining machinery, equipment, and fixtures. In the fifth finding, it found that Hattie A. Tavenner had notice of said transfer of property before she made her advances of money to the defendants in June, July, and August of that year. Therefore, as against her, the title of the development company was good as to all of the mines company's property in the state of Utah, including said mining machinery, equipment, and fixtures. Notwithstanding these findings, the court, in finding No. 12, found that the property, consisting of mining machinery attached at the commencement of the action, was the property of the defendants. This was clearly error as against the development company, because it not only subjected its property to the satisfaction of any judgment that might be obtained *against the development company,* but also to the satisfaction of any judgment that might be obtained *against the mines company.* Besides this, it is clear from all the evidence including the judgment in the case of *Boston Acme Mines Development Co.* v. *Clawson,* 66 Utah, 103, 240 P. 165, which was admitted in evidence, that the title of the mines company to all of its property in Utah passed to the development company, including the mining machinery attached in this action, by the sale thereof made in May, 1919. It is true that in that case, while we held that the Tavenners were not creditors of the mines company at the time of the sale of the property in 1919, we expressly reserved finding upon the question as to whether or not they became creditors after the sale, without notice thereof, and dealt with the mines company on the faith of its being the owner of the property. That reservation no doubt constituted the basis for the present action. The court, however, as hereinbefore shown in the instant case, found that the Tavenners, especially Hattie A. Tavenner, had notice of the sale and transfer to the development com-

pany before she loaned the money for which this action was brought, and therefore could not have dealt with the mines company on the faith of its ownership of the property. The finding of the court in the instant case, that the defendants are the owners of the property attached, was therefore prejudicial error.

This brings us to a consideration of the errors relied on by the mines company, which appears specially in this court by way of appeal to test the jurisdiction of the district court to render judgment against it.

On February 6, 1926, the appellant mines company appeared specially for the purpose of moving to quash, vacate, and set aside the summons as to the mines company, and the proof of service thereof by publication, and to dismiss the action as to it on the following grounds:

"The plaintiff above named and his attorney of record are hereby notified that the defendant Boston Acme Mines Corporation appears specially and limits and restricts its appearance to the special purposes of this action, and not otherwise, and that it moves the court to quash, vacate, and set aside the summons issued herein to the defendant Boston Acme Mines Corporation, and the proof of service thereof by publication, and to dismiss the action accordingly, as to it, on the following grounds to wit:

"(1) Said summons is not sufficient, upon its face, to bring this action into court, or to give the court jurisdiction of this nonresident corporation defendant, if or when properly served, or the right to proceed against any of its property.

"(2) The affidavit for the publication of such summons does not disclose a cause of action in respect to which service of summons against a nonresident or foreign corporation defendant is by law authorized.

"(3) The affidavit for publication of summons does not set forth or show the existence of jurisdictional grounds authorizing or warranting the service of summons on this defendant by publication.

"(4) The affidavit for publication and the proof of publication of said summons herein do not show due legal compliance either in the matter of mailing of a copy of the complaint and summons to this moving defendant, or the time and means of proof of the summons and service upon this defendant by publication, or otherwise, or at all.

"(5) Said affidavit and order for publication of summons are unauthorized.

"(6) Said summons, affidavit, and proofs do not show that this court has acquired jurisdiction of the person of this defendant or the right to proceed against it or any of its property, but they do affirmatively show the contrary."

Respondent challenges the right of appellant to be heard on its motion to quash, contending that appellant made a general appearance and therefore waived its motion to quash. It will be observed that appellant, in its motion to quash, also moved to dismiss the action. It appears from appellant's brief that its motion to dismiss was based upon the alleged failure of respondent to comply with the provisions of section 6546, which authorizes a dismissal of the action on certain grounds. The section, in part, reads:

"Within ten days after service of the summons, the complaint, if not previously filed, together with the summons and proof of service thereof, must be filed in the office of the clerk of the court in which the action is brought. At the same time, one copy of the complaint shall be deposited with the clerk for the defendants in each county in which the summons shall have been served, unless a copy thereof was served with the summons in each of such counties. Otherwise the action shall be dismissed on motion of any defendant. * * *

Appellant was mistaken as to the date when the returns were filed, for the record shows they were filed in time. It also shows that a copy of the complaint was filed when the summons was issued and before the attempted service by publication.

Respondent insists that the motion to dismiss the action went beyond the purpose of a motion to quash, and was, in effect, a general appearance, that a motion to quash a summons and proof of service thereof does not, if quashed, necessarily call for a dismissal of the action, and that defendant's motion to dismiss the action invoked the power and jurisdiction of the court for relief beyond the scope and purpose of the motion to quash the summons and service thereof. Respondent calls our attention to the following

authorities: *Cooke* v. *Cooke* (Utah) 248 P. 83; 2 R. C. L. 328; *Bucklin* v. *Strickler*, 32 Neb. 602, 49 N. W. 371; *Security Loan & Tr. Co.*, etc., v. *Boston & S. R. Fruit Co. et al.*, 126 Cal. 418, 58 P. 941; 59 P. 296; *Gilbert Arnold Co.* v. *City of Superior*, 93 Wis. 194, 67 N. W. 38; *Fisk* v. *Thorp*, 60 Neb. 713, 84 N. W. 79; *Ziska* v. *Avey*, 36 Okl. 405, 122 P. 722; *Gorham* v. *Tanquerry*, 58 Kan. 233, 48 P. 916.

In *Cooke* v. *Cooke* (Utah) 248 P. 83, the rule is stated in the headnotes 21 to 23 inclusive as follows:

"21. Appearance to quash issuance or service of summons is special, regardless of whether it is so denominated.

"22. Appearance for filing general demurrer to complaint, or otherwise pleading to merits, is general, regardless of whether it is so denominated.

"23. Application for extension of time to plead constitutes general appearance."

In *Security Loan & Trust Co.* v. *Boston, etc., Fruit Co.*, supra, 126 Cal. 421, 58 P. at page 942, it is said:

"When a party moves to set aside a default and judgment upon the ground that the court had no jurisdiction over his person because there had been no valid service of summons, he must carefully occupy that ground exclusively, and must keep out of court for all other purposes."

In *Gilbert Arnold Land Co.* v. *City of Superior*, supra, the first headnote (67 N. W. 38) states the rule as applicable to that case:

"An appearance, and a motion to set aside a judgment because the costs are excessive, because no affirmative relief was asked against the moving party, and because the action was prosecuted under a champertous agreement, are consistent only with the fact of jurisdiction, and waive any defect in, or want of, service of process."

In *Fisk* v. *Thorp*, 60 Neb. 713, 84 N. W. 79, it was held that defendants acknowledged jurisdiction by appearing and invoking the process of the court to set aside the judgment rendered against them.

In *Gorham* v. *Tanquerry*, supra, the single headnote reads as follows:

"The defendants, upon whom there had been no valid service, appeared, and attacked the jurisdiction of the court, and at the same time asked that an attachment which had been levied upon their property should be discharged, upon the ground that the affidavit of plaintiff, made to procure the attachment, was insufficient. Held that, having appeared, for other purposes and presented other considerations than those of jurisdiction, they made a general appearance, and gave the court general jurisdiction over them.

In *Bucklin* v. *Strickler*, 32 Neb. 602, 49 N. W. 371, the second and third headnotes reflect the opinion and holding of the court:

"2. Technical objections to the service of a summons must be specifically pointed out to justify the court in sustaining them.
"3. A motion to quash a summons because of defects therein or in serving the same, should be confined to the defects complained of. If it go further, and pray for a dismissal of the case, it is a general appearance in the action, as it invokes the power of the court on a question other than that relating to jurisdiction."

The rule is well stated in 2 Ency. Pl. & Pr. at page 625, as follows:

"The principle to be extracted from the decisions on the subject as to when a special appearance is converted into a general one, is that, where the defendant appears and asks some relief which can only be granted on the hypothesis that the court has jurisdiction of the cause and the person, it is a submission to the jurisdiction of the court as completely as if he had been regularly served with process, whether such an appearance, by its terms, be limited to a special purpose or not."

Many cases are cited in the note, among which is *Lowe* v. *Stringham*, 14 Wis. 222, which states the reason for the rule as follows:

"The reason that under such circumstances a special appearance is converted into a general one is, that otherwise the defendant would be given this advantage: After objecting that he was not properly

in court, he could go in, take his chance of a trial on the merits, and, if it resulted in his favor, insist upon the judgment as good for his benefit; but, if it resulted against him, he could set it all aside upon the ground that he had never been properly in court at all. If a party wishes to insist upon the objections that he is not in court, he must keep out for all purposes except to make that objection."

Counsel for respondent also challenges appellant's motion to quash on the grounds that it does not comply with the provisions of section 6547, requiring the certificate of counsel to the effect that, in his opinion, the objection is well taken. It is probable that the omission of such certificate might be grounds for striking the motion if a motion therefor was seasonably made. We seriously doubt that the point can be successfully urged for the first time in this court. In any event, that question is not of controlling importance, and is therefore reserved.

Appellant takes the position that it moved to dismiss on jurisdictional grounds, and for that reason its motion did not convert its special appearance into a general appearance. It seems to us, however, that appellant's motion to dismiss the action invoked the power of the court to grant relief on other than jurisdictional grounds.

Motions to quash for jurisdictional defects are not highly favored by the courts. In Brown on Jurisdiction (2d Ed.) at page 210, it is said:

"It is held in some states that a person may specially appear in an action to show that a proper return of service has not been made on him, but the practice of permitting one to appear for such purpose is declining. Where a party appears for the purpose of showing some jurisdictional defect, he may by a general appearance bring himself under the jurisdiction of the court; and courts are opposed to the practice of having one appear to tell them he is not there."

Other points are urged by respondent against the right of appellant to be heard on its motion to quash especially because, as respondent contends, the second ground of the motion is in the nature of a demurrer to the affidavit for service by publication and the fourth ground of the motion

requires the court to go into the proofs and examine them for the purpose of determining their sufficiency.

We are not sure that these objections are obnoxious to the rule announced by the authorities we have referred to. The motion to quash is perhaps, in some respects, insufficient for uncertainty, for the rule is that a ■ motion of this kind must particularly specify the objection. Section 6547 and *Bucklin* v. *Strickler* heretofore referred to. If, for instance, the motion had been objected to as to that part, calling for a dismissal of the motion, the objection must necessarily have been sustained. No reason whatever is specified why the action should be dismissed, and it would be impossible for the court to find a reason after the most careful examination of the record.

Other grounds assigned for the motion may be afflicted with the same infirmity, but objections thereto have not been urged by respondent.

We are of opinion the trial court committed no error in denying appellant's motion to quash and motion to dismiss the action.

For the reasons stated, the judgment against the development company is reversed, and the cause remanded to the trial court, with directions to enter findings, conclusions, and decree in favor of appellant; respondent to pay the costs on appeal. The judgment against the mines company is affirmed, at appellant's cost.

CHERRY, GIDEON, and HANSEN, JJ., concur.

STRAUP, J. (concurring in part, and dissenting in part). I concur in the prevailing opinion reversing the judgment against the development company. I dissent from the ruling affirming the judgment against the mines company.

The holding of the prevailing opinion is that, because the mines company, in connection with its motion on specified grounds that the summons was insufficient and defective and of noncompliance with the statute to effect a legal

service, and hence the court had not acquired jurisdiction of the person of the mines company "to quash, vacate, and set aside the summons issued" against it, also asked, on such sole ground and no other "to dismiss the action accordingly as to it," a general appearance resulted, and a waiver of the motion to quash and vacate the summons. The prevailing opinion treats the matter, not expressly, but impliedly, as though the motion to quash may be regarded as well taken, had the mines compony in connection therewith not asked to dismiss the action. I shall consider the matter from the same viewpoint.

In my judgment, and I think a reading of the cases shows, there is only one case cited and referred to in the prevailing opinion, that of *Bucklin* v. *Strickler*, 32 Neb. 602, 49 N. W. 371, which supports the conclusion reached in the prevailing opinion. I think even that case, in so far as it relates to the particular point or question in hand, is distinguishable. There the court held that the summons, its issuance and service, were in substantial compliance with the statute, and hence the objections thereto were not well founded. However, the court there further observed that "the motion is too broad. It is to dismiss the action. The most that could be done in any case where the only objection is that the service is defective is to quash the summons. In such case the appearance must be limited to that purpose; otherwise it is general." There the only motion made was "to dismiss the case." While no motion was there made to quash the summons, only to dismiss the case, yet it is apparent that the motion to dismiss was based on the sole ground of a want of a proper and sufficient service of summons, a ground challenging only jurisdiction of the person of the defendant. In no other particular and on no other ground was the action of the court invoked. In other words, the court there was asked to dismiss the case on the sole ground that the court did not have jurisdiction of the person of the defendant. Had the defendant there moved the court to dismiss the case on a ground or grounds other than

on jurisdictional grounds or on no stated or specified grounds, let it be conceded that the conclusion reached of a general appearance would have been sound. But the defendant did not do that. Hence the correctness of the conclusion of a general appearance may well be doubted.

No doubt the general rule is well settled, and, as stated in 2 Ency. Pl. & Pr., referred to in the prevailing opinion, and as more fully stated in 4 C. J. 1318, that:

"A defendant appearing specially to object to the jurisdiction of the court must, as a general rule, keep out of court for all other purposes. In other words, he must limit his appearance to that particular question, or he will be held to have appeared generally and to have waived the objection. If he takes any step consistent with the hypothesis that the court has jurisdiction of the cause and the person, such special appearance is converted into a general one, whether it is limited in its terms to a special purpose or not."

And as often expressed in the adjudicated cases, any act by the defendant taking or seeking some step or proceeding in the case beneficial to himself or detrimental to the plaintiff other than one testing only jurisdiction, or any act by the defendant which recognizes jurisdiction of his person, amounts to a general appearance. Hence, filing a general demurrer or otherwise pleading to the merits, controverting and invoking a ruling on a material allegation in the complaint, moving for a continuance or to discharge an attachment, or to dismiss an action on the ground or grounds other than want of jurisdiction, or by taking or seeking other steps or proceedings in the case beneficial to himself or detrimental to the plaintiff, other than testing jurisdiction, constitutes a general appearance. That is what is taught in the cited case of *Cooke* v. *Cooke* and in the other cases cited in the prevailing opinion.

In determining whether an appearance is general or special, courts look to matters of substance rather than to form. If an appearance in effect is general, the court will so regard it, though the defendant denominates his appear-

ance a special appearance. When, however, only a special appearance manifestly is intended, and one only to challenge jurisdiction of person, and to invoke a ruling on that question, and nothing else, the court may not enlarge the appearance, for the extent to which a defendant submits himself to the jurisdiction when he voluntarily comes in is determined by his own consent.

The appearance of a defendant in a case and moving to dismiss it may, in many instances, amount to a general appearance. The pertinent inquiry in such case is: Was the motion based or made on some ground or grounds other than want of jurisdiction of the person, or on no specific ground, or on merely a general motion, without specifying anything? In 4 C. J.. 1340, the author says:

"A general appearance results from the making of a motion * * *to dismiss the action, unless made on the sole ground of want of jurisdiction over the defendant. A motion to dismiss solely for want of jurisdiction does not constitute a general appearance."

The cases are there cited.

Here the sole ground on which the defendant asked to dismiss the case as to it was a want of jurisdiction of the person. That is clear. It, however, is said that the defendant, on the ground of want of jurisdiction of the person, was not entitled to a dismissal of the case. But since the defendant asked a dismissal on the sole ground of want of jurisdiction of the person, and on no other ground, the question of whether the defendant's appearance was general or special is not determinative by the kind of ruling made thereon, that if he be entitled to the dismissal and the motion therefore granted the appearance is special, but if he is not entitled to it and the motion be denied, the appearance is general. The substance, the ground, the essence of the matter here presented by the defendant was want of jurisdiction of its person. There was no other ground stated in the motion, and no question other than of jurisdiction

was thereby invoked. It is just as clear that the defendant asked the dismissal of the case on the sole ground of want of jurisdiction of the person as to quash the summons on such ground. Because the defendant was not entitled to a dismissal on such ground—only to quash the summons—gave the court no authority to treat the part of the prayer of the motion for a dismissal as though a motion for a dismissal had been made on some ground other than a want of jurisdiction of the person, and thereby enlarge the appearance into a general appearance. In other words, because the defendant on the sole ground of want of jurisdiction of the person asked for something responsive thereto, quash the summons, but also on such sole ground and on no other asked for something in addition, but irresponsive thereto, a dismissal of the case, something with respect to which judicial action was not and legally could not be invoked on such ground, gave the court no authority to treat the appearance for a purpose manifestly not intended, and as though a motion had been made and judicial action invoked on some ground other than the ground of want of jurisdiction of the person.

Further, the default entered against the mines company was not on the theory that the motion filed by such defendant constituted a general appearance, but that, "the mines corporation not having any answer in the case, judgment by default of that defendant for failure to appear and answer, summons having been served by publication, may be entered by the clerk, and judgment entered on the default against that defendant in favor of the plaintiff." A judgment rendered on publication of the summons could not be one in personam. It could only be as to a res, property of such defendant seized by attachment, or otherwise within the jurisdiction of the court. Proceedings in such case are in rem to subject the property to the claimed demand. Here the judgment rendered and entered against the mines company was not such, but one in personam on the claim sued on, regardless of the attached property. I think the

court, on a publication of summons, was not authorized to do that.

Further, the attached property was found by the court not to be the property of the mines company. Thus the proceeding in rem as to that company was groundless, and with such finding ceased, and the function and efficacy of the summons by publication rendered of no avail. In other words, the court, as to the mines company, had no seized property or res before it; yet, on the publication of the summons rendered and entered a personal judgment against it on the demand or debt. I see no authority for that. The respondent seeks to avoid such a conclusion, as well as all urged objections to the summons, by the claim that the appearance of the mines company was general. That, as it seems to me, as I have already attempted to show, is equally groundless.

ON REHEARING.

PER CURIAM. This case was heretofore considered and determined by an opinion of this court filed February 11, 1928. On petition for a rehearing, filed by the appellant Boston Acme Mines Company, a rehearing was granted on its behalf. The principal point urged by the petition, and on which the rehearing was granted, involves the question of whether the appearance of that company in the cause in the court below constituted a general or a special appearance. The parties thus were further heard on that question, and additional authorities were presented by them. After re-examining and further considering the question, and in view of the additional authorities and arguments of counsel on rehearing, a majority of the court is still of the opinion that the conclusion reached on the question in the former prevailing opinion should prevail.

Hence the prevailing opinion heretofore filed is reaffirmed and adopted as the final opinion in the cause.